UNITED STATES of America, Appellee,

v.

John Harold CADWELL, Appellant.

UNITED STATES of America, Appellee,

v.

Carl Richard ZIMMERMAN, Jr., Appellant.

Nos. 87–5366, 87–5425.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1988.

Decided Dec. 20, 1988.

Scott Tilsen, Minneapolis, Minn., for appellant.

Jack S. Nordby, Minneapolis, Minn., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and HILL,* Senior District Judge.

McMILLIAN, Circuit Judge.

John Harold Cadwell and Carl Richard Zimmerman, Jr. appeal from final judgments entered in the District Court[1] for the District of Minnesota upon jury verdicts finding Cadwell guilty of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and both Cadwell and Zimmerman guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The district court sentenced Cadwell to two concurrent four year terms of imprisonment, three years special parole, and a special assessment of $100 and Zimmerman to six years imprisonment and a special assessment of $50. For reversal, Cadwell and Zimmerman each argue that the district court erred in denying his motion for severance and that there was insufficient evidence to sustain his convictions. Zimmerman additionally argues that the district court erred in denying his motion to suppress certain evidence. For the reasons discussed below, we affirm.

These cases arose from a Bureau of Criminal Apprehension (BCA) undercover investigation in Coon Rapids, Minnesota. In early 1987, BCA agents began investigating the activities of Cadwell, Zimmerman, and David Aasen.[2] On January 8, February 5, and February 17, 1987, undercover BCA agent, Eugene Leatherman, purchased cocaine from Aasen. During the February 5, 1987, cocaine transaction, Leatherman witnessed Cadwell supply cocaine to Aasen and heard Aasen refer to Cadwell as his "guy." When Leatherman purchased cocaine from Aasen on February 17, 1987, he noticed that Aasen was driving the same vehicle that Cadwell had been driving during the course of the February 5 transaction.

In early March 1987, Leatherman arranged a fourth cocaine transaction with Aasen. On March 3, 1987, Aasen told Leatherman that he was having some problems with his cocaine source, that he was going to visit his source within a half hour, and that he would call Leatherman once he had talked with his source. Twenty minutes later, two other BCA agents observed Aasen's car leave his residence and followed him. Although the surveillance officers lost contact with the car in traffic,

---

* The Honorable Irving Hill, Senior United States District Judge for the Central District of California, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

2. Aasen was tried together with Cadwell and Zimmerman but his conviction is not now before this court on appeal.

they immediately proceeded to Zimmerman's residence where they observed Aasen's car parked in the driveway. Shortly thereafter, the surveillance officers observed Aasen leave Zimmerman's residence, drive to a nearby business, and use a pay telephone. Aasen placed a call to Leatherman and left a message on Leatherman's answering machine indicating that everything was "fine" for the following morning.

On March 4, 1987, Leatherman met Aasen in a restaurant parking lot. Within minutes of Aasen's arrival, a Drug Enforcement Administration (DEA) agent observed Zimmerman driving past the restaurant in a pick-up truck. Aasen suggested that he and Leatherman drive to a nearby park where "John" would meet them to complete the sale. Leatherman, however, refused to leave the parking lot. Aasen indicated he would go to the park alone and return in approximately twenty minutes. The DEA agent observed Aasen leave the parking lot and drive about a mile to Riverside Park. At this time, Zimmerman was observed driving in the park. Aasen's car was observed in the park for twenty minutes at which time Zimmerman continued to circle the park.

A DEA agent then observed Cadwell arrive in a jeep and pull alongside of Aasen's car where the two spoke for about one minute. The two of them then each left the park. At this time, Zimmerman was observed approaching the park on foot. Aasen returned to the restaurant. When Aasen produced two plastic bags, each containing four ounces of cocaine, Leatherman and the other agents arrested him and Cadwell. Zimmerman was arrested in the park and consented to a search of his pick-up truck. A pair of binoculars was seized from the truck. Later that day, a search warrant was executed at Zimmerman's residence. This search revealed drug paraphernalia, firearms, a ledger, notebooks, cash, various papers, and a checkbook in Zimmerman's name. An agent testified that the notations in the seized notebooks appeared to refer to drug transactions and corresponded to entries in Zimmerman's checkbook.

Cadwell, Zimmerman, and Aasen were charged with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Cadwell was separately charged with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and with Zimmerman in a second count. Cadwell and Zimmerman's pre-trial and trial motions for severance were denied. Zimmerman's motion to suppress the evidence obtained at the search of his residence was also denied. The jury found Cadwell and Zimmerman guilty of conspiracy and Cadwell guilty of one count of distribution. The jury acquitted Cadwell and Zimmerman of the other distribution count. On August 4, 1987, Cadwell was sentenced to two concurrent four year terms of imprisonment and Zimmerman was sentenced to six years imprisonment. These appeals followed.

## SEVERANCE

■ Cadwell and Zimmerman each argue that the district court abused its discretion in denying his motion to sever his trial from that of his co-defendants. Each argues that he was prejudiced because the evidence of his co-defendants' guilt was overwhelming and direct, while the evidence of his guilt was merely circumstantial. As a result, each argues that he was denied a fair trial because the jury was unable to compartmentalize the evidence. We do not agree.

> The general rule is that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. Severance will be allowed upon a showing of real prejudice to an individual defendant. The motion to sever is addressed to the sound discretion of the district court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown.

*United States v. Miller*, 725 F.2d 462, 467 (8th Cir.1984) (citations omitted). "The preference for joint trials of defendants jointly indicted, particularly where conspiracy is charged, is not limited by any re-

quirement that the quantum of evidence of each defendant's culpability be equal." *United States v. Jackson*, 549 F.2d 517, 525 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977) (citation omitted).

Neither Cadwell nor Zimmerman has demonstrated that he was prejudiced by the denial by the trial court of the motions for severance. Fed.R.Crim.P. 14. They have not shown that the joint trials adversely affected the substantial rights of either of them. *United States v. Bostic*, 713 F.2d 401, 403 (8th Cir.1983).

Cadwell, Zimmerman and Aasen were jointly indicted and charged with membership in the same conspiracy, although each played a different role at a different level of responsibility in the conspiracy. Cadwell and Zimmerman were also charged with one or more substantive offenses in connection with the conspiracy. Both the government's theory of the case and the evidence presented were relatively straightforward. While the quantum of evidence presented against each defendant may not have been equal, the evidence was not so complex that the jury was unable to compartmentalize it for each count against each defendant. Cadwell's and Zimmerman's acquittal on their shared distribution count supports our conclusion.

## SUFFICIENCY OF THE EVIDENCE

■ In reviewing the record for sufficiency of the evidence, we view the evidence in the light most favorable to the jury verdict and deem as established any reasonable inferences consistent with the finding of guilt. *Smalley v. United States*, 798 F.2d 1182, 1188 (8th Cir.1986); *United States v. Kaminski*, 692 F.2d 505, 512 (8th Cir.1982). Cadwell and Zimmerman each argues that the evidence was insufficient to support his convictions. We do not agree.

Cadwell argues that the evidence showed only that he was present at the scene of several drug transactions and failed to establish that he played any role in the conspiracy. The record, however, supports the jury's finding that Cadwell was a member of the conspiracy and distributed cocaine as charged. Leatherman testified that he observed Cadwell deliver cocaine to Aasen on February 5, 1987. Thus, the record showed that Cadwell was a mid-level distributor in the conspiracy and that his involvement in the events was more than mere presence.

■ Zimmerman argues that even if one were to assume that all of the drug paraphernalia found in his home was used in a drug sales operation, there is no evidence from which the jury could find that he had conspired to sell drugs with anyone. He contends that the only evidence of his working in concert with his co-defendants was the March 4th transaction of which he was acquitted. The evidence viewed in the light most favorable to the jury verdict shows more than mere presence or association with criminals. The drug paraphernalia found in Zimmerman's residence and his conduct as observed on March 4th was consistent with his role as both a source and a lookout, which are sufficient to support his conviction of conspiracy to distribute cocaine.

## MOTION TO SUPPRESS

■ Zimmerman argues that the search warrant for his residence was unlawful and that the evidence seized should have been suppressed. He argues that the affidavit in support of the search warrant did not establish probable cause and contained material misrepresentations or omissions. We do not agree.

We review affidavits for search warrants using the "totality of the circumstances" approach. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Affidavits are to be read and interpreted in "a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). "Deference is accorded an issuing magistrate's probable cause determination...." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir.1978) (citations omitted), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). Here, Aasen's statement to agent Leatherman, the affiant, that he was going to his source's

house in a short time and would call Leatherman afterwards, the observations of Aasen's car parked in Zimmerman's driveway, and Aasen's telephone call immediately after leaving Zimmerman's residence, establishes probable cause.

Zimmerman also argues that the affidavit omitted the fact that the surveillance officers lost Aasen's car in traffic and did not follow him to Zimmerman's house. Even if we add this omitted fact to the affidavit, there was probable cause. As noted earlier, after the surveillance officers lost Aasen's car in traffic, they immediately drove to Zimmerman's house, where they saw Aasen's car in the driveway.

Accordingly, the judgment of the district court is affirmed.