# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1168

_____

Pablo Ortega,           *
                                *

    Appellant,        *
                                *

       v.             *   Appeals from the United States District
                                *   Court for the Northern District of Iowa.

United States of America,    *
                                *

    Appellee.         *

_____

No. 01-1170

_____

United States of America,    *
                                *

    Appellee,         *
                                *

       v.             *
                                *

Daniel Castro,        *
                                *

    Appellant.        *

_____

No. 01-2106

_____

United States of America,    *
                                *

    Appellee,         *
                                *

|                      |   |
|----------------------|---|
| v.                   | * |
|                      | * |
| Sonya Polmanteer,    | * |
|                      | * |
| Appellant.           | * |

_____

Submitted: August 21, 2001

Filed: November 1, 2001 (Corrected: 12/6/01)
_____

Before RILEY, ROSS, and BEAM, Circuit Judges.
_____

ROSS, Circuit Judge.

Pablo Ortega, Daniel Castro, and Sonya Polmanteer appeal from judgments entered upon jury verdicts finding them guilty of possession of methamphetamine with the intent to deliver, in violation of 21 U.S.C. § 841. Appellants challenge the sufficiency of the evidence supporting their convictions. Polmanteer also challenges her sentence. We affirm the convictions, but vacate Polmanteer's sentence and remand for resentencing.

**BACKGROUND**

On June 11, 2000, Iowa State Trooper Matt Anderson stopped a Ford Crown Victoria automobile with California license plates in Cerro Gordo County, Iowa, for speeding. Polmanteer was the driver; Castro was the front seat passenger; Ortega and another man were in the back seat. Polmanteer could not produce a driver's license. Although the automobile was registered to Castro, he could not produce insurance papers. Castro told Anderson that the previous owner had continued insurance on the car. Polmanteer and Castro told Anderson that they were going to the Mall of America in Minneapolis, Minnesota, for shopping. Polmanteer identified

the back seat passengers as Ortega and the other as Castro's uncle, but later told Anderson the fourth passenger was a hitchhiker. Although Castro first had claimed the fourth passenger was his friend, he later stated he did not know the passenger's name. The fourth passenger was later identified as Viaz Savala.

After Castro consented to a search of the automobile, Savala was placed in the patrol car of a trooper who arrived to assist Anderson. Appellants were placed in Anderson's patrol car, in which an audio-videotape recorder was operating. Because the video camera, which was located to the right of the rear view mirror, faced forward, it captured the events outside the car. However, a microphone on the door frame captured the conversation inside the car. Polmanteer's voice was identifiable as the only female voice, and the government was unable to attribute statements made by the two males specifically to Castro or Ortega. A portion of the conversation was as follows:

> Polmanteer: Are there drugs in that f----- car right now?
> Male:        Why?
> Polmanteer: Cause I'm going to f---- jail if there are. I'm going to jail.
>                    And you're going to jail.
>                    ***
> Male:   Don't get excited. He has to find drugs in the car first [unintelligible]
> Polmanteer: He's taken all those f------ screws off over the
> Male: From where?
> Polmanteer: From the engine, and from the door . . . right there on the engine on the [unintelligible] I guess like from where the f------
> Male: [unintelligible]
> Polmanteer: I better not f------ go to jail, Pablo. If I go to jail you f----- gotta get me out . . .
> Male:        [unintelligible]

-3-

Polmanteer: I am nervous.

Male:　　　[Unintelligible]

Polmanteer: 'Cause I thought there was nothing in there.

The troopers could not find any drugs during the search. However, because Anderson noticed signs of tampering around the windshield and other indications that drugs might have been hidden, he had the car towed and obtained a search warrant. While waiting for the tow truck, Castro changed his story about purchasing the car from an individual, claiming he had purchased it from a salvage yard. After the tow truck came, Anderson drove appellants and Savala to a restaurant. He gave them a telephone number to call about picking up the car if no contraband was found. Officers found no drugs during the second search. The next day, after viewing the videotape, Anderson applied for another warrant. During the third search, officers removed the windshield and found six and one-half pounds of methamphetamine hidden in a compartment beneath the windshield. Because no one had telephoned about picking up the car, officers looked for and found appellants in an unlit, unused portion of the bus station with tickets to Des Moines, Iowa. They had no credit or ATM cards, checkbooks, or anything else they could have used for shopping at the Mall of America. Savala was not found and became a fugitive.

Castro, Ortega, and Polmanteer were charged with conspiracy to distribute and possession with the intent to distribute more than 500 grams of methamphetamine. After a two-day trial, the jury returned a verdict acquitting them of the conspiracy charges, but finding them guilty of the possession charges. The district court denied their motions for judgment of acquittal, or in the alternative for a new trial. The court also denied Polmanteer's motion for reconsideration, which was based on a juror's comments made after the trial. Castro and Ortega were sentenced to 188 months.

In January 2001, Polmanteer appeared for sentencing. The district court denied a requested acceptance-of-responsibility reduction under U.S.S.G. § 3 E1.1, but stated

it was considering her request for a role-in-the-offense reduction under U.S.S.G. § 3B1.2. However, the court stated it would not take her "word" and suggested if she were serious about the reduction, she "should take a polygraph test on it." Although the government stated it had little faith in polygraphs, it indicated that if Polmanteer took a polygraph and failed, it would ask for a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The court asked Polmanteer how she felt about taking a polygraph examination, noting it might not be without risk. After Polmanteer told the court she wanted to take the test because she knew it would help her, the court postponed sentencing.

On February 4, 2001, the district court entered an order that "Polmanteer undergo a polygraph examination and that polygraph evidence then be taken into account for sentencing purposes." The court noted that the government had filed a resistance, but rejected its argument that the polygraph would taint its assessment of Polmanteer's credibility. The court stated "only after hearing evidence regarding the examiner's qualification, training, the fairness, the questions and other related matters, will the court be in a position to determine the weight, if any, to be given defendant Polmanteer's polygraph evidence." The court also added that "out of an abundance of caution, the court will [] consider such evidence only after defendant Polmanteer testifies at her sentencing."

In April, Polmanteer appeared before the court for sentencing. The government informed the court that Polmanteer had taken a polygraph examination conducted by an examiner of her choice and had failed on the issue of her knowledge of drugs in the car. Although the government had not seen a copy of the examiner's report, it moved for an obstruction-of-justice enhancement. In response to the court's inquiry about the report, Polmanteer's counsel responded she did not "pass on the issue of her knowledge . . . of methamphetamine in the vehicle," but resisted the obstruction enhancement and renewed her request for a role-in-the-offense reduction.

After listening to argument by counsel, but without taking any evidence, testimonial or otherwise, the district court granted the government's motion for a two-point enhancement for obstruction of justice, reasoning that by trying to pass a polygraph examination Polmanteer indirectly had attempted to give false testimony at sentencing in hopes of a lighter sentence. Although the court had suggested the polygraph examination in connection with Polmanteer's request for a role reduction, it nonetheless found that she was entitled to the reduction based on the trial evidence. From the 151 to 181 month guideline range, the court sentenced Polmanteer to 151 months.

## DISCUSSION
### Sufficiency of the Evidence

Ortega, Castro, and Polmanteer argue that the district court erred in denying their motions for judgment of acquittal, asserting that the evidence was insufficient to support the verdicts. Appellants concede that in reviewing their claims we must view the evidence and all reasonable inferences therefrom in the light most favorable to the verdicts. United States v. Butler, 238 F.3d 1001, 1003 (8th Cir. 2001). However, quoting United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996), cert. denied, 520 U.S. 1258 (1997), they argue that if the "evidence is equally strong to infer innocence as to infer guilt," the court was required to direct an acquittal. Appellants' reliance on Davis is misplaced. (internal quotation omitted) As we have noted in Butler, 238 F.3d at 1004, Davis conflicts with United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996), cert. denied, 520 U.S. 1179 (1997). In Baker, this court stated that "'[i]f the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.'" Id. (quoting United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991)). "Although we are not free to overrule Davis, we are free to follow Baker, which is the standard this court has overwhelmingly favored." Butler, 238 F.3d at 1004.

Appellants concede that substantial evidence of constructive possession would be sufficient to support their convictions. To prove constructive possession, the government had to present evidence that appellants had knowledge and "'ownership, dominion or control over the contraband itself, or dominion over the [vehicle] in which the contraband is concealed.'" United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000) (quoting United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997)), cert. denied, 121 S. Ct. 1739 (2001). In addition, "[t]he possession 'need not be exclusive, but may be joint.'" United States v. Wajda, 810 F.2d 754, 761 (8th Cir.) (quoting United States v. Caspers, 736 F.2d 1246, 1249 (8th Cir. 1984)), cert. denied, 481 U.S. 1040 (1987). After reviewing the evidence, we hold that the government presented sufficient evidence of constructive possession.

We first address Ortega's arguments. Ortega does not contest the sufficiency of the evidence as to his knowledge of the drugs, but asserts that there was insufficient evidence of his dominion or control over the drugs or over the car in which the drugs were hidden. Noting he did not own and was not driving the car at the time it was stopped, Ortega asserts that the evidence only showed that he was a backseat passenger. As he points out, "'[m]ere presence as a passenger in a car from which the police recover contraband . . . does not establish possession.'" United States v. Willis, 89 F.3d 1371, 1377 (8th Cir.) (quoting United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983)), cert. denied, 519 U.S. 909 (1996). In addition, mere association with persons who possess drugs is insufficient to show constructive possession. Wajda, 810 F.2d at 762.

In this case, the government presented evidence showing much more than mere presence or association. There was evidence from which a reasonable juror could infer that Ortega had control over the methamphetamine. During the conversation in the patrol car, Polmanteer turned to Ortega regarding the location of the hidden drugs and for assistance if she were arrested. For example, when Anderson began looking near the mirror, Polmanteer asked Ortega, "Should I be worried, Pablo?" When

Polmanteer told Ortega that Anderson was taking screws out from the engine and the door, she said "I better not m-----f----- go to jail, Pablo. If I go to jail you f------ gotta get me out." During the conversation, Ortega never expressed surprise that drugs could have been hidden in the car. Contrary to Ortega's argument, the jury's rejection of the conspiracy charge does not negate the evidence of his relationship to the other appellants. As the government notes, "'[a] jury may acquit a defendant as to one or more charges for any number of reasons, including an inclination to be merciful, and yet come to the reasonable conclusion that the defendant was guilty of other related charges.'" United States v. Madrid, 224 F.3d 757, 762 (8th Cir. 2000) (quoting United States v. Whatley, 133 F.3d 601, 606 (8th Cir.), cert denied, 524 U.S. 940 (1998)).

Ortega's reliance on United States v. Quintanar, 150 F.3d 902 (8th Cir. 1998), is misplaced. In that case, we held that the government failed to present sufficient evidence that the defendant had constructive possession of drugs in a package addressed to another, noting, among other things, the defendant had never been in the home where the package was delivered or in a car with the drugs. Id. at 904-05. Here, Ortega was present in the car in which the drugs were found and the evidence showed that he had control over them.

Castro, who was the owner of the car, does not challenge the evidence of his dominion or control, but argues that there was insufficient evidence that he knew of the hidden drugs. We disagree. Like Ortega, during the conversation in the patrol car, Castro never expressed surprise that drugs were concealed in the Crown Victoria. Moreover, the jury could have inferred guilty knowledge from Castro's implausible and contradictory statements to the trooper. See Butler, 238 F.3d at 1004. Although Castro stated that appellants were going shopping at the Mall of America, they had no cash, checks, credit or ATM cards. In addition, Castro first told Anderson that he had purchased the car from an individual, but when he realized that Anderson had noticed signs of tampering, he claimed he had bought the car from a salvage yard.

The signs of tampering around the windshield also supported an inference that Castro knew drugs had been hidden in the car. See Willis, 89 F.3d at 1377 (scratch marks on wheel well supported inference that defendant knew drugs were hidden therein). The jury also could have inferred guilty knowledge from the fact that Castro did not telephone to inquire about picking up the car after the search at the garage, but instead fled to the bus station. See United States v. Barnes, 140 F.3d 737, 738 (8th Cir. 1998) ("Evidence of flight or escape . . . has probative value as evidence of consciousness of guilt.").

Polmanteer argues that there was insufficient evidence of both her control and her knowledge. As the driver of the car in which the drugs were found, there was sufficient evidence of control. See Willis, 89 F.3d at 1377 (driver had control of car even if girlfriend usually drove it); United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994) (driver had control even though he claimed passenger owned car and records showed neither owned it). As to her knowledge, Polmanteer argues that her statements on the videotape show she did not know that drugs were in the car. We disagree. Polmanteer's argument is based on isolated comments and questions taken out of context. It is also based on her assertion that she did not know an audio-video recorder was capturing her conversation. As to this assertion, there was evidence from which the jury could have inferred that Polmanteer in fact knew that it was operating. Indeed, at one point, she pointed out the recorder and joked about singing into it.

Even if she did not know her conversation was being recorded, based on the entire conversation, a jury could have reasonably inferred that she knew drugs had been hidden in the car. Although Polmanteer highlights to this court her comments that she did not know drugs had been hidden in the car, she does not highlight the following comments:

Polmanteer: Oh, s---, he's gonna find the . . .

Polmanteer: My [unintelligible], he's looking at it. . . OK, good. . .
[radio traffic]
Polmanteer: . . . nobody knows anything about the this f----- bato right here

At oral argument, her counsel suggested she was worried about the officers finding towels she had taken from a motel. However, when the remarks are put in context, it was reasonable for the jury to infer that she was talking about drugs, not towels. Polmanteer asked Castro why he had consented to a search of the whole car; she worried if the troopers would smell "it;" and it was Polmanteer who told Castro to change his story about purchasing the car from an individual to purchasing it from a salvage yard. In addition, the jury could also have inferred her guilty knowledge from her implausible and inconsistent statements to Anderson, the obvious signs of tampering with the car, and her attempt to flee.

The district court also did not abuse its discretion in denying appellants' motions for new trials based on the weight of the evidence under Fed. R. Crim. P. 33. A district court may grant a new trial under Rule 33 "'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000) (quoting United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992)). The district court was in the best position to make this determination, and the record on appeal gives us no basis to second-guess its determination. Id. at 783-84. Although Polmanteer asks us to consider that after the verdict a juror had expressed concern about the evidence, we will not do so. Polmanteer concedes that the district court properly denied her motion for reconsideration because Fed. R. Evid. 606(b) prohibits juror inquiry into the validity of a verdict. We will not allow Polmanteer to evade the prohibition of Rule 606(b) under the guise of a Rule 33 motion. Nor will we address Castro's claim that his counsel was ineffective for failing to file a suppression motion. This claim should be raised in a 28 U.S.C. § 2255 motion.

-10-

**Polmanteer's Sentence -- Enhancement for Obstruction of Justice**

Polmanteer argues that the district court erred in granting a two-point obstruction-of-justice enhancement under U.S.S.G. § 3C1.1, which applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing" of an offense. Polmanteer does not dispute that "lying for the purpose of obtaining a lighter sentence constitutes obstruction of justice within the meaning of section 3C1.1." United States v. Flores, 959 F.2d 83, 87 (8th Cir.), cert. denied, 506 U.S. 976 (1992). However, noting that "[t]he government bears the burden of proving the facts necessary to support a finding of obstruction of justice," United States v. O'Dell, 204 F.3d 829, 836 (8th Cir. 2000), she argues that the government failed to satisfy its burden.

We agree with Polmanteer. Although "[a] formal sentencing hearing is not [] the exclusive means by which the government may meet [its evidentiary burden]," United States v. Elliot, 89 F.3d 1360, 1370 (8th Cir. 1996), (internal quotation omitted), cert. denied, 519 U.S. 1119 (1997), the government in this case produced no evidence whatsoever that Polmanteer had lied in hopes of receiving a reduction for her role in the offense. Despite the district court's assurances in its February 2001 order that it would assess Polmanteer's credibility "only after hearing evidence regarding the examiner's qualifications, training, the fairness, the questions, and other related matters," it did not do so. As Polmanteer points out, the government failed to offer the examiner's report; nor did the examiner testify as to his qualifications or the questions asked. In fact, although the court ordered the polygraph so that Polmanteer could convince it that a role reduction was warranted, her alleged "failure" went to the issue of her knowledge of the drugs, which relates to her guilt, not to her role in the offense. Indeed, the district court granted a two-point reduction for her role in the offense under § 3B1.2, based on its finding that the trial evidence showed she was a minor participant. See Elliot, 89 F.3d at 1370 (court may base sentencing findings on trial evidence).

-11-

We also want to remind the government that although at sentencing a district court may consider information that would be inadmissible at trial, the information must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (a). We note that most courts of appeal that have considered the issue of admissibility of polygraph evidence at sentencing have upheld refusals to admit such evidence. See e.g. United States v. Thomas, 167 F.3d 299, 307-08 (6th Cir. 1996) (affirming exclusion of defendant's polygraph evidence in support of role reduction); United States v. Messina, 131 F.3d 36, 42 (2d Cir. 1997) (defendant's "polygraph evidence . . . was unworthy of credit"), cert. denied, 523 U.S. 1088 (1998); United States v. Stein, 127 F.3d 777, 781 (9th Cir. 1997) (defendant's polygraph evidence was "too conclusory to be probative"); cf. United States v. Weekly, 118 F.3d 576, 581 (8th Cir.) (upholding denial of § 5C1.2(5) safety-valve exception because evidence of defendant's deceitfulness other than refusal to take polygraph examination), cert. denied, 522 U.S. 1020 (1997); United States v. Pitz, 2 F.3d 723, 729 (7th Cir. 1993) (no plain error in sentencing court's reliance on witness's polygraph because it was only one factor in court's credibility assessment and court "recognized that polygraph tests are not an entirely reliable indication of veracity"), cert. denied, 511 U.S. 1130 (1994).

As the Supreme Court noted in upholding a per se exclusion of polygraph evidence at court martial proceedings, "there is simply no consensus that polygraph evidence is reliable." United States v. Scheffer, 523 U.S. 303, 309 (1998). Indeed, because of reliability concerns, the government opposed the district court's consideration of polygraph evidence in connection with Polmanteer's request for a role reduction. However, in an about face, the government advocated use of the polygraph results in support of an obstruction enhancement. The government's position seems somewhat inconsistent with the policy of the Department of Justice (DOJ). Although supporting the limited use of polygraphs for investigatory purposes, given their deficiencies, the DOJ "takes the position that polygraph results should not be introduced into evidence at trial" and "opposes all attempts by defense counsel to

-12-

admit polygraph evidence or to have an examiner appointed by the court to conduct a polygraph test." United States Attorneys' Manual, § 9-13.300. Polygraphs -- Department Policy. In addition, we note that while not addressing the issue of polygraphs, the Guidelines caution that a "court should be cognizant that inaccurate testimony or statements may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, comment. (n.2); cf. Scheffer, 523 U.S. at 313-15 (fearing jury's credibility assessments may be adversely influenced by polygraph results). Reliability issues aside, we have concerns that it was the district court's "suggestion" that Polmanteer take a polygraph examination. We do not recommend that other courts follow suit. Such a "suggestion" puts the defendant in an awkward position.

Accordingly, we affirm the convictions, but vacate Polmanteer's sentence and remand for resentencing.[1]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]We note that after considering the circumstances of the offense, Polmanteer's characteristics and history, and other relevant factors, see 18 U.S.C. § 3553(a), the district court sentenced Polmanteer to the low end of the sentencing range. Of course, these considerations will be relevant in the court's selection of an appropriate sentence within the new guideline range.