# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2116

_____

| | | |
|---|---|---|
| United  States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Homero Bustos Flores, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 03-2118

_____

Appeals from the United States
District Court for the Northern
District of Iowa.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Juan Sereno Arreola, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  October 21, 2003

Filed:  April 2, 2004

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.

Juan Sereno-Arreola and Homero Bustos-Flores were jointly indicted and tried for possession of methamphetamine with intent to distribute. The jury convicted both defendants. They now appeal, arguing several grounds for reversal. We affirm the district court's denial of Sereno-Arreola's motion for a judgment of acquittal and Bustos-Flores's motion to sever, but reverse and remand to the district court for reconsideration of the sentencing enhancement for obstruction of justice against Sereno-Arreola.

On the night of February 27, 2002, Iowa State Patrol Trooper Justin Simmons stopped a car for speeding on Interstate 35 near Clear Lake, Iowa. Trooper Chris Callaway soon arrived on the scene to assist Trooper Simmons.

There were two occupants in the car: the driver, defendant Sereno-Arreola, and a passenger, defendant Bustos-Flores. During the stop, the troopers made some observations about the car. As Trooper Simmons approached the car, he was "overwhelmed" by a strong detergent smell emanating from an open window. The officers also saw several tubes of silicone and a small plastic baggie inside the car.

In response to questioning by the officers, Sereno-Arreola told Trooper Simmons that they were returning to Minnesota from Des Moines. He explained that he had been in Des Moines for two to three days, looking for an apartment. Bustos-Flores said that he had been in Des Moines to meet girls, but later changed his story to say that he had been in Des Moines to look for work. According to Trooper Simmons, the two defendants were "kind of . . . laughing, kind of giddy" and both seemed nervous. For example, as Bustos-Flores handed the officers some paperwork, his hands were shaking and he would not make eye contact with them.

The troopers issued Sereno-Arreola a warning for speeding and told him that he and Bustos-Flores were free to leave. At this point, Trooper Calloway asked Sereno-Arreola for permission to search the car, which was granted.

During the search, both defendants sat in Trooper Simmons's patrol car, where their conversation was recorded by police video equipment. The defendants spoke in a coded language in which Spanish words were combined with the English suffix -tion. Once decoded, the translation revealed that at one point the defendants had discussed dividing and selling cocaine.

During the search, the troopers found a variety of items in the car, including containers of silicone, blankets, fragrance, caffeine pills, black electrical tape, cans of expanding foam, plastic containers, a fan, receipts and luggage. The troopers also found that the car had been altered to create several hidden compartments, which were either empty or filled with rags and trash bags. Because the night was cold, the troopers decided to continue their search at the nearby Iowa Department of Transportation. Once the search continued, the troopers discovered three packages of methamphetamine hidden in the spare tire.

The defendants were charged with possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Both defendants were found guilty following a joint jury trial. The district court sentenced Sereno-Arreola to 235 months and Bustos-Flores to 188 months. This appeal followed.

On appeal, Sereno-Arreola challenges the district court's denial of his motion for a judgment of acquittal and the imposition of an obstruction of justice enhancement in his sentence. Bustos-Flores challenges the district court's denial of his motion to sever. We affirm the district court's denial of Sereno-Arreola's motion for a judgment of acquittal and Bustos-Flores's motion to sever, but reverse and

remand for reconsideration of the sentencing enhancement for obstruction of justice against Sereno-Arreola.

## I.

Sereno-Arreola argues that the district court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to support the guilty verdict. On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict. United States v. Butler, 238 F.3d 1001, 1003 (8th Cir. 2001). We will reverse the denial of a motion for a judgment of acquittal only if "no construction of the evidence exists to support the jury's verdict." United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996). In other words, this court will reverse a conviction, including one based solely on circumstantial evidence, only if a reasonable juror must have entertained a reasonable doubt about the government's proof on an element of the offense. United States v. Davidson, 122 F.3d 531, 535 (8th Cir. 1997); United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996).[1]

---

[1]Sereno-Arreola argues that because his defense was a plausible alternative explanation for the evidence against him, his conviction must be overturned. He cites United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996), for the proposition that if the "government's evidence is equally strong to infer innocence as to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal." Davis expressly applies to the situation in which the government's evidence is equally suggestive of guilt and innocence. Any evidence that supports Sereno-Arreola's claim of innocence comes not from the government, but from his own testimony. Therefore, Davis does not control. More applicable to this case is United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996), which states that if all of the evidence presented by the prosecution and the defense could rationally support two conflicting hypotheses, the reviewing court will not disturb the conviction. Though subsequent cases have stated that Baker and Davis appear to be in conflict, they have chosen to follow Baker, as do we. See, e.g., United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001).

-4-

Sereno-Arreola contends that his conviction must be reversed because the government did not prove that he knew methamphetamine was in the car. The government may show that Sereno-Arreola knowingly possessed the drugs with evidence of constructive possession. United States v. Shurn, 849 F.2d 1090, 1093 (8th Cir. 1988). To show constructive possession, the government must offer evidence that defendants had knowledge and "ownership, dominion, or control over the contraband itself, or dominion over the [vehicle] in which the contraband is concealed." United States v. Ortega, 270 F.3d 540, 545 (8th Cir. 2001) (quotation omitted).

There was sufficient evidence of Sereno-Arreola's control over the drugs because he was the driver of the car. See id. at 546 (sufficient evidence of control even though driver was not owner of vehicle). As we discuss below, there was also sufficient evidence of his knowledge that drugs were hidden in the car to sustain the conviction.

Sereno-Arreola and Bustos-Flores told the officers that they were returning to Minnesota from Des Moines. They offered different reasons for being in Iowa: Sereno-Arreola said he had been in town for two or three days looking for an apartment, and Bustos-Flores said he was trying to meet girls (then later changed his story to looking for a job). The government introduced evidence that directly contradicted these stories and supported a finding that the defendants were actually returning from California. For example, the government introduced a gas station receipt from Wood River, Nebraska (a six or seven hour drive from Clear Lake) that was dated the same day of the traffic stop. The government also introduced evidence of a Western Union transfer sent by Sereno-Arreola from California to his wife in Minnesota two days before the stop. When Sereno-Arreola testified, he admitted that he had lied to the police and that he was actually returning from California. The jury could properly consider his lies to the officers as evidence of Sereno-Arreola's knowledge of the drugs. See Butler, 238 F.3d at 1004 (lies to officer about purpose

of trip may support inference of guilty knowledge of drugs in car). Similarly, Sereno-Arreola's extreme nervousness throughout the stop is evidence which the jury could properly use to buttress its conclusion that he knew drugs were hidden in the car. See id. at 1004.

The jury was permitted to consider the circumstances surrounding the discovery of the drugs. Troopers found three packages containing a large amount of methamphetamine in the spare tire of the car that Sereno-Arreola was driving. The drugs were packaged with black electrical tape and silicone. Both materials were found either in the passenger compartment of the car or in the trunk next to the defendants' luggage. The troopers noticed a strong detergent smell emanating from the car, which one officer testified is often used as a masking agent to cover the smell of drugs. Perhaps most importantly, in a recorded conversation during the traffic stop, the defendants discussed dividing up and selling drugs.

Throughout the trial, the government introduced rebuttal evidence illustrating weaknesses in Sereno-Arreola's story. For example, Sereno-Arreola testified that Bustos-Flores hired him to drive from Minnesota to California and back because Bustos-Flores did not have a valid license. However, on the first day of the trip, Bustos-Flores received a speeding ticket while driving the car. Similarly, despite Sereno-Arreola's claim that he barely knew Bustos-Flores, there was evidence that he actually knew his codefendant well.[2] The jury was entitled to consider and weigh all this evidence. "It is not the province of this Court to reweigh evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence on appeal."

_____

[2]For example, phone numbers from a list found in Bustos-Flores's wallet had been called from Sereno-Arreola's cell phone, despite the fact that Bustos-Flores had his own cell phone. When stopped for speeding earlier in the trip, Bustos-Flores gave Sereno-Arreola's Minnesota address as his home address. Most importantly, the defendants began speaking in the bilingual code without discussion, as if the code had been prearranged or used before.

United States v. Aguilar-Portillo, 334 F.3d 744, 747 (8th Cir. 2003) (quotations omitted).

Taking all these facts together, and viewing the evidence in the light most favorable to the jury's verdict, the government presented sufficient evidence of defendant Sereno-Arreola's guilt to convince a jury beyond a reasonable doubt. We affirm his conviction.

II.

Sereno-Arreola next argues that the district court erred when it enhanced his sentence two levels for obstruction of justice. We review a district court's factual findings in support of an obstruction of justice enhancement for clear error. United States v. Molina, 172 F.3d 1048, 1058 (8th Cir. 1999). We review the application of the sentencing guidelines to the facts *de novo*. United States v. O'Dell, 204 F.3d 829, 836 (8th Cir. 2000).

The government moved for the obstruction of justice enhancement, alleging that Sereno-Arreola committed perjury when he testified at trial. The Sentencing Guidelines provide that if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing" of an offense, the court may depart from the statutory guidelines and increase the defendant's sentence by two levels. U.S.S.G. § 3C1.1. Committing perjury at trial constitutes an obstruction of justice within the meaning of § 3C1.1. Molina, 172 F.3d at 1058. Because a finding of obstruction results in an increase in a defendant's sentence, the government bears the burden of proving the facts necessary to support the finding by a preponderance of the evidence. O'Dell, 204 F.3d at 836.

The sentencing court cannot give the upward departure "simply because a defendant testifies on his own behalf and the jury disbelieves him." United States v. Washington, 318 F.3d 845, 861 (8th Cir.) (quotation omitted), cert. denied, 124 S. Ct. 209 (2003). To do so would chill a defendant's constitutional right to testify on his own behalf. See United States v. Harris, 352 F.3d 362, 366 (8th Cir. 2003). Rather, once a defendant objects, the sentencing court must itself conduct an independent evaluation and determine whether the defendant committed perjury. United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996); United States v. Willis, 940 F.2d 1136, 1140 (8th Cir. 1991). While it is preferable for the district court to address each element of the alleged perjury in a separate and clear finding, the determination is sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." United States v. Dunnigan, 507 U.S. 87, 95 (1993); see also United States v. Iverson, 90 F.3d 1340, 1342-43 (8th Cir. 1996).

In considering the enhancement, the district court said, "I don't really have to find that he lied. I can simply find that the jury thought he lied." The United States Attorney properly explained to the district court that the court itself must make the determination. Later, however, the following exchange took place between the district court and Sereno-Arreola's counsel:

> THE COURT: But isn't the bottom line if the jury believed your client he wouldn't have been found guilty?
> MS. FORSYTH: That's true, but I also think if -- just because a jury didn't believe him doesn't mean he lied, and essentially that's my argument.
> THE COURT: Well, the jury found beyond a reasonable doubt that he lied. You don't disagree with that, do you?
> MS. FORSYTH: I agree that the jury did not believe him.
>  . . . .
> THE COURT: I find that obstruction of justice was properly scored. We have a situation here where in order to find the defendant guilty the

> jury would have found beyond a reasonable doubt that they did not believe his testimony it seems to me, and I know of no reason why I should disagree with the jury's finding in this case.
>
> And, therefore, it's a proper case for the application of the obstruction-of-justice guideline . . . .

The government argues that the district court made the requisite independent judicial determination of perjury. We reject this argument.

This case illustrates the line dividing the jury's disbelief of a defendant's testimony and a district court's finding of perjury. In sentencing, the district court relied on the jury's finding of guilt and imposed the enhancement because it found no reason to disagree with the jury. However, the jury's disbelief of Sereno-Arreola's testimony is not the equivalent of a finding by the district court that he committed perjury. See United States v. Smith, 62 F.3d 641, 647 n.3 (4th Cir. 1995) (noting that a district court might have sufficient evidence to permit a jury to convict beyond a reasonable doubt yet itself be unconvinced of defendant's guilt by a preponderance). Sereno-Arreola committed perjury only if he gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Taylor, 207 F.3d 452, 454-55 (8th Cir. 2000) (quoting Dunnigan, 507 U.S. at 94). It is true that the jury must have disbelieved at least part of Sereno-Arreola's testimony, because the jury rendered a guilty verdict in spite of his testimony. Even if it was clear that the jury thought Sereno-Arreola committed perjury when he testified on his own behalf, Dunnigan requires that the district court independently review the testimony and make its own determination. See United States v. Benson, 961 F.2d 707, 709-10 (8th Cir. 1992) (reversing enhancement when district court relied solely on jury verdict); United States v. Scotti, 47 F.3d 1237, 1251-52 (2d Cir. 1995) (reversing enhancement when district court based enhancement in part on guilty verdict).

Though we give "great deference" to a district court's decision to grant an enhancement for obstruction of justice, see United States v. Calderon-Avila, 322 F.3d 505, 507 (8th Cir. 2003), we will reverse an enhancement when the district court's findings were not sufficient, see United States v. Brooks, 174 F.3d 950, 958-59 (8th Cir. 1999); United States v. Ransom, 990 F.2d 1011, 1014 (8th Cir. 1993); Benson, 961 F.2d at 709-10. While we have considered a number of cases that have gone close to the line, we believe the record in this case lacks a finding that illustrates the trial court used its independent judgment and did not rely solely on the verdict. See, e.g., United States v. Kessler, 321 F.3d 699, 703 (8th Cir. 2003) ("I heard the trial testimony, and I think [it constitutes] obstruction of justice"); United States v. Brown, 311 F.3d 886, 890 (8th Cir. 2002) ("I believe the defendant did testify untruthfully"). Accordingly, we vacate Sereno-Arreola's sentence and remand for resentencing. We stress that the factual determination of perjury on remand is within the sound discretion of the trial court. See Benson, 961 F.2d at 710.

III.

Bustos-Flores makes a single argument, asserting that the district court erred when it denied his motion to sever his trial from Sereno-Arreola's.[3] We will not reverse a denial of a motion to sever unless the appellant demonstrates an abuse of discretion resulting in clear prejudice. United States v. Pherigo, 327 F.3d 690, 693 (8th Cir.), cert. denied, 123 S. Ct. 2663 (2003).[4]

---

[3]In the Summary of the Case section of Bustos-Flores's brief, he lists as an issue for appeal "the Court's denial of the defendant's request for safety-valve eligibility." However, he does not mention the issue in the argument section of his brief, thereby waiving the issue. See Etheridge v. United States, 241 F.3d 619, 622 (8th Cir. 2001) ("Claims not argued in the briefs are deemed abandoned on appeal.")

[4]The government argues that because Bustos-Flores did not renew his motion to sever at the conclusion of the government's case or at the close of all the evidence, we should review for plain error only. United States v. Mathison, 157 F.3d 541, 546

Bustos-Flores and Sereno-Arreola were indicted together. Two or more defendants may be charged in the same indictment if they allegedly participated in the same offense. Fed. R. Crim. P. 8(b).[5] Once defendants are properly joined under Rule 8, there is a strong presumption for their joint trial, as it "gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995) (quotation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) (joint trials are efficient and avoid the "scandal and inequity of inconsistent verdicts").

Despite the preference for joint trials, the district court has the discretion to order severance under Federal Rule of Criminal Procedure 14 if it appears that the defendant is prejudiced by the joinder.[6] However, the standard for severance is high; the prejudice must be severe or compelling. Pherigo, 327 F.3d at 693. "The mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials," United States v. Mason, 982 F.2d 325, 328 (8th Cir. 1993) (quoting United States v. Johnson, 944 F.2d 396, 403 (8th Cir. 1991)), as a codefendant frequently attempts to "'point the finger,' to shift the blame, or to save himself at the expense of

---

(8th Cir. 1998); United States v. Frank, 354 F.3d 910, 920 (8th Cir. 2004). We have stated, however, in United States v. Rogers, that "[t]his circuit has rejected the rigid requirement that the defendant must renew his severance motion after the close of the government's case, and instead we consider the actions taken by the defendant in light of the purposes for requiring the motion's renewal." 150 F.3d 851, 856 (8th Cir. 1998) (citing United States v. Dobin, 938 F.2d 867, 869 (8th Cir. 1991)). We need not engage in an extended analysis to determine whether Bustos-Flores preserved the issue because our review, whether for abuse of discretion resulting in clear prejudice or for plain error, produces the same result in this case.

[5]Bustos-Flores does not challenge the initial joinder.

[6]Rule 14 provides that "[i]f the joinder of . . . defendants . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires."

the other," United States v. Basile, 109 F.3d 1304, 1309-10 (8th Cir. 1997) (quoting United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996)). Similarly, the possibility that a defendant's chances for acquittal may be better in a separate trial is an insufficient justification for severance. Delpit, 94 F.3d at 1143.

Bustos-Flores claims that the district court erred in denying his motion for severance because his and Sereno-Arreola's defenses were mutually antagonistic and because the joint trial caused the jury to find Bustos-Flores guilty by his mere association with Sereno-Arreola. We deal with each claim in turn.

Mutually antagonistic defenses exist when the jury must disbelieve the core of one defense in order to believe the core of the other. Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1997). Sereno-Arreola testified on his own behalf, claiming his innocence. He claimed that he was simply chauffeuring Bustos-Flores to and from California, that he had no knowledge of the drugs in the car, that he lied to the police during the stop because Bustos-Flores told him to do so, and that Bustos-Flores later admitted his involvement in the crime. As best as we can discern, Bustos-Flores's defense was that the government failed to prove the case against him, although neither his brief nor the record on appeal make this explicit.[7] We observe that some courts have held that similar defenses were not irreconcilable, as a jury could believe one defendant's claim of innocence as well as another defendant's claim that the prosecution did not meet its burden of proof. See United States v. Cruz, 127 F.3d 791, 800 (9th Cir. 1997) (holding that innocent bystander defense was not irreconcilable with defense of reasonable doubt and that entrapment defense was not

---

[7]We reach this conclusion based on the fact that although Bustos-Flores did not testify on his own behalf or call any witnesses, he conceded nothing and made a motion for a judgment of acquittal at the close of the government's case. Our conclusion is based on the evidence introduced at trial; the opening and closing arguments were not provided to us as part of the record on appeal.

irreconcilable with defense of insufficient evidence), abrogated on other grounds by United States v. Jimenez Recio, 537 U.S. 270 (2003); United States v. Magdaniel-Mora, 746 F.2d 715, 719-20 (1st Cir. 1984) (holding that defense that implicated codefendants in the crime was not antagonistic with defense of insufficient evidence).

Even if we assume that the defenses were mutually antagonistic, Bustos-Flores is not automatically entitled to severance. See United States v. Ortiz, 315 F.3d 873, 898 (8th Cir. 2002), cert. denied, 123 S. Ct. 2095 (2003). "Mutually antagonistic defenses are not prejudicial *per se*." Zafiro, 506 U.S. at 538. Bustos-Flores is not entitled to severance unless he can show a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. This high standard could be met when evidence that would be inadmissible against one defendant if he were tried alone is admitted against his codefendant, when many defendants are tried in a complex case with "markedly different degrees" of culpability, or when a joint trial denies a defendant exculpatory evidence that would be available if he was tried alone. Id. This standard also would be met if "'there is a danger that the jury will unjustifiably infer that [the conflict in defenses] *alone demonstrates that both are guilty*.'" Basile, 109 F.3d at 1310 (quoting Delpit, 94 F.3d at 1143) (emphasis in Delpit); see also Ortiz, 315 F.3d at 898.

In an attempt to make the requisite showing of prejudice, Bustos-Flores cites generally to the fact that because Sereno-Arreola's defense was that he was innocent and Bustos-Flores was to blame, the government received the assistance of Sereno-Arreola's counsel in convicting Bustos-Flores. This is simply a restatement of the argument rejected by the Supreme Court in Zafiro: that mutually antagonistic defenses are inherently prejudicial. 506 U.S. at 539; accord United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997) (prejudice from joint trial must be greater than that inherent in trying multiple defendants together).

-13-

Bustos-Flores argues that the joint trial was prejudicial because Sereno-Arreola's counsel elicited evidence against him on cross-examination of Troopers Simmons and Calloway that the prosecution had not previously introduced. Prompted by the questioning of Sereno-Arreola's counsel, each trooper testified that a picture of Jesus Malverde was found in Bustos-Flores's bag and that Jesus Malverde is known as the patron saint of drug traffickers. First, this evidence was isolated and irrelevant to any element of the charged conduct. Bustos-Flores's counsel cross-examined the troopers in a manner that emphasized the weakness of the testimony. For example, despite Trooper Calloway's claim that Jesus Malverde was the patron saint of "bandits," he testified on cross-examination that the Spanish word for bandit was not found in the prayer accompanying the picture. The admission of this evidence did not create the compelling prejudice necessary to require severance. See Darden, 70 F.3d at 1526 (prejudice must be severe or compelling); United States v. Beasley, 102 F.3d 1440, 1448 (8th Cir. 1996) (to establish prejudice, a defendant must show an appreciable chance that he or she would not have been convicted had severance been granted).

Moreover, the admission of this isolated testimony is not the danger severance is designed to prevent. "The danger of joinder of defendants is that the jury will associate the guilt of one defendant to another defendant or will be confused. A defendant does not have a right against having his codefendant elicit testimony which may be damaging to him." United States v. Andrus, 775 F.2d 825, 849 (7th Cir. 1985). We hold that the admission of this testimony did not violate a specific trial right of Bustos-Flores or prevent the jury from making a reliable judgment about his guilt or innocence. See Zafiro, 506 U.S. at 539.

Similarly, Bustos-Flores was not prejudiced by the admission of Sereno-Arreola's testimony. As the Supreme Court has stated:

-14-

> [A] fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

Id. at 540. Because Sereno-Arreola's testimony would have been admissible against Bustos-Flores had their trials been severed, its admission at the joint trial did not violate Bustos-Flores's constitutional rights. See United States v. Brown, 331 F.3d 591, 595-96 (8th Cir. 2003); Hood, 141 F.3d at 897; United States v. Ghazaleh, 58 F.3d 240, 244 (6th Cir. 1995).

Bustos-Flores also claims that the government's "overwhelming" evidence against Sereno-Arreola created a "spillover" effect so that the jury found Bustos-Flores guilty by his "mere association" with Sereno-Arreola. We are not convinced that the evidence was significantly weaker against Bustos-Flores than it was against Sereno-Arreola. Much of the evidence against Bustos-Flores and Sereno-Arreola was the same: their nervousness with police; their conflicting and changing stories and lies to the police concerning their travel; the items found in the search of the car, such as the silicone tubes, fabric softener, black tape, and packages of methamphetamine; and their conversation in code about drugs while in the patrol car. Even if Bustos-Flores is correct that the evidence against Sereno-Arreola was slightly stronger, Bustos-Flores was not automatically entitled to severance on this ground, see United States v. Davidson, 122 F.3d 531, 538 (8th Cir. 1997), as there is no requirement in a joint trial that "the quantum of evidence of each defendant's culpability be equal," United States v. Caldwell, 864 F.2d 71, 73-74 (8th Cir. 1988) (quotation omitted). The trial was short, it consisted of the same count against both defendants, the issues

-15-

were not complex, and the district court properly instructed the jury.[8]  We are satisfied that the jury was able to compartmentalize the evidence against each defendant.  See United States v. Ghant, 339 F.3d 660, 666 (8th Cir. 2003), cert. denied, 124 S. Ct. 1184 (2004).

Although we conclude that Bustos-Flores suffered no cognizable prejudice from being jointly tried, any prejudice he may have suffered was minimized by the district court's cautionary instructions.  See Zafiro, 506 U.S. at 538-39 (the tailoring of the relief to be granted is left to the district court's sound discretion); United States v. Frazier, 280 F.3d 835, 844 (8th Cir.), cert. denied, 535 U.S. 1107 (2002); United States v. Mathison, 157 F.3d 541, 546 (8th Cir. 1998).

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.  We vacate Sereno-Arreola's sentence and remand to the district court to consider findings relevant to an enhancement of Sereno-Arreola's sentence for obstruction of justice.

_____

[8]The district court instructed the jury in part that "each defendant is entitled to be treated separately and to have the charge against him considered separately."