**UNITED STATES of America,
Appellee,**

v.

**Gary O'DELL, Appellant.**

No. 99–2460.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 2000.

Decided Feb. 29, 2000.

Jeffrey A. Neary, LeMars, Iowa, argued, for appellant.

Richard L. Murphy, Asst. U.S. Atty., Cedar Rapids, Iowa, argued (C.J. Williams, on the brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP, District Judge.[1]

ALSOP, District Judge.

A jury found Gary O'Dell guilty of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), five counts of money laundering, in violation of 18 U.S.C. § 1956, and one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. The district court,[2] on May 26, 1999, sentenced O'Dell to 210 months on the drug count and 78 months on the money laundering counts, the sentences to run concurrently. O'Dell appeals his conviction and sentence. We affirm.

**I.**

O'Dell's conviction stems from his participation in a drug trafficking scheme based out of Mason City, Iowa. Steve Gomez headed the drug trafficking organization; O'Dell, along with several others, worked for Gomez.

The Gomez organization dealt in large amounts of methamphetamine, marijuana, and cocaine. The group obtained the drugs from sources Gomez had developed and maintained in Arizona and California. The evidence showed that Gomez or one of his associates would travel to one of these states, purchase the drugs, and then return to Iowa where the drugs would be sold. The money used to purchase the drugs came from the proceeds of past drug sales.

---

1. The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

2. The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa.

O'Dell started working for Gomez in 1995 and was allegedly a member of the Gomez conspiracy until 1997. Government witnesses testified that O'Dell stored methamphetamine and marijuana in his house for Gomez. In addition, several of these witnesses testified that O'Dell made trips, four in total, to Arizona and California to purchase drugs and bring them back to Iowa. One witness testified that, on one of these trips, O'Dell helped in an attempt to manufacture methamphetamine out of ephedrine. The evidence also showed that O'Dell helped "rerock" or "ct" methamphetamine, and that he counted drug money for Gomez.

In addition, the government identified several occasions on which O'Dell used Western Union to wire money to Arizona to purchase drugs, or obtained a cashier's check and sent that through the mail for the same purpose. In doing so, O'Dell often used a fictitious name to help conceal the reason for sending the money. O'Dell also received a cashier's check in the amount of $10,000, sent to him at Gomez's direction, while he was in Arizona. The money came from drug proceeds and was used to purchase more drugs.

O'Dell was charged, along with Gomez and several others, with conspiracy to commit money laundering, money laundering, and conspiracy to distribute drugs. By the time O'Dell went to trial, most of his codefendants had pled guilty, and some of them testified against him at his trial. O'Dell's trial lasted four days, and the jury returned a verdict of guilty on the two conspiracy counts and on five of the substantive money laundering counts.

On appeal, O'Dell alleges the district court made two errors at trial and three at sentencing. For the trial issues, O'Dell argues that the district court erred in admitting evidence that O'Dell possessed methamphetamine and in refusing to grant a mistrial after the prosecutor made improper remarks in his rebuttal closing argument. For the sentencing issues, O'Dell contends that the district court erred in enhancing his sentence for obstruction of justice, in failing to reduce his sentence for playing a minor or minimal role in the conspiracy, and in failing to reduce his sentence under the so-called "safety valve" provision. We consider each of these arguments in turn.

## II.

### A. Admission of Evidence

■ O'Dell argues that the district court erred in admitting evidence that he possessed methamphetamine. We review a district court's decision to admit evidence for an abuse of discretion. *United States v. McMurray*, 34 F.3d 1405, 1411 (8th Cir.1994), *cert. denied*, 513 U.S. 1179, 115 S.Ct. 1164, 130 L.Ed.2d 1119 (1995). The evidence at issue came in through the testimony of Elaine Merrill, the general assistance director in Cerro Gordo County, Iowa. Ms. Merrill testified that on October 7, 1996, she met with O'Dell regarding his application for general assistance. After he left, Ms. Merrill discovered a small coin purse on O'Dell's chair. She opened it the next morning and found several individual packets containing a powdery substance, later determined to be methamphetamine. O'Dell argues that this evidence should not have been admitted because it constitutes impermissible "character" evidence under Rule 404(b) of the Federal Rules of Evidence.[3] We disagree.

■ Our cases have firmly established that crimes or acts which are "inextricably intertwined" with the charged crime are not extrinsic and Rule 404(b) does not apply. *See United States v. Severe*, 29 F.3d 444, 447 (8th Cir.1994) (" '[W]here the evidence of an act and the evidence of a crime charged are inextricably intertwined, the act is not extrinsic and Rule

---

**3.** Fed.R.Evid. 404(b) provides in relevant part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

404(b) is not implicated.' ") (quoting *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985)), *cert. denied*, 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995). O'Dell was charged in this case, together with his codefendants, with conspiring to distribute methamphetamine from 1994 until 1997. Possessing methamphetamine, even a small amount, during the period in which he is accused of conspiring to distribute the *same* drug is direct evidence that defendant participated in the conspiracy, and therefore Rule 404(b) is not implicated. *See McMurray*, 34 F.3d at 1412 (evidence obtained during a prior arrest, including a gun and a scale with cocaine residue, was "part of the government's proof that the appellants were engaged in a conspiracy to distribute cocaine," and was therefore not Rule 404(b) evidence); *Severe*, 29 F.3d at 447 (coconspirator's testimony that defendants delivered a kilogram of cocaine to her residence "did not implicate Rule 404(b) because it tend[ed] to prove whether a conspiracy to distribute cocaine existed"); *United States v. Stephenson*, 924 F.2d 753, 763–64 (8th Cir.) (admission of various drug paraphernalia, weapons, and cash was not governed by Rule 404(b) where it was "plainly relevant to the existence of and appellants' participation in the conspiracy charged"), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991), *and cert. denied*, 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991).

Moreover, the probative value of the evidence is not substantially outweighed by its prejudicial effect. *See United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir.) (stating that the "dictates of rule 403 must still be applied" to evidence falling outside the scope of Rule 404(b)), *cert. denied*, 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). In reaching this determination, we recognize the overall strength of the government's case and note that this evidence played only a small part. We therefore conclude that the district court did not abuse its discretion in admitting the evidence.

## B. Prosecutorial Misconduct

O'Dell next argues that the district court erred in refusing to grant a mistrial after the prosecutor made inaccurate and misleading statements during his rebuttal closing argument. Prosecutorial misconduct is grounds for a mistrial where (1) the prosecutor's remarks are in fact improper, and (2) the remarks prejudicially affect the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985). We will not reverse a district court's refusal to grant a mistrial unless we find an abuse of discretion. *Id.*

In his rebuttal closing argument, the prosecutor addressed the government's ability to compel witnesses to testify:

> [T]his Government cannot force somebody to testify if they don't want to. Even if they're convicted of a crime, there is no way for the Government to force the person to take the stand to tell what they know. You can't draw out the facts from them of [sic] their knowledge in any way by forcing them to do it. You can't threaten them. You can't put them in jail longer. There's no way to draw out the facts they know from them. The only way we can do it in this system is to do it voluntarily.

(Prosecutor's Closing Argument Tr., at 38–39.) We agree with O'Dell, and the government does not seriously contend otherwise, that these remarks were in fact improper. "The power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo–American jurisprudence." *Kastigar v. United States*, 406 U.S. 441, 443, 92 S.Ct. 1653, 1655, 32 L.Ed.2d 212 (1972). This power is not absolute, of course, as a person may refuse to testify, for example, if the response would violate the Fifth Amendment privilege against compulsory self-incrimi-

nation. *See id.* at 444, 92 S.Ct. at 1656 (noting that "[t]here are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination").

■ Yet, even where the Fifth Amendment is implicated, the government may compel a witness to testify if the government grants the witness immunity from future prosecution. *See id.* at 453, 92 S.Ct. at 1661, 32 L.Ed.2d 212 (holding that 18 U.S.C. § 6002, which provides immunity from use and derivative use, "is coextensive with the scope of the [Fifth Amendment] privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege"). That happened in this case. The government granted use immunity to some of O'Dell's codefendants, and they testified at his trial. To suggest to the jury that these witnesses were testifying "voluntarily," and that the government had no way of "forc[ing]" them to testify, was improper.

■ This does not end our inquiry, however. The remarks, when reviewed in the context of the whole trial, must have been "so offensive as to deprive the defendant of a fair trial." *Hernandez*, 779 F.2d at 460 (citation omitted). We consider three factors in making this determination: (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court. *Id.*

We start with the third factor. Right after the prosecutor finished his rebuttal, the district court expressed its concern outside of the presence of the jury that the remarks were "very misleading." After a discussion with counsel for both parties, the district court decided it was best to issue the following curative instruction to the jury immediately:

> [The prosecutor] told you that the Government cannot force somebody to testify if they don't want to, even if they're convicted of a crime, and that they can't go to jail for any longer if they refuse to testify. And that's not an accurate statement of the law. *The Government may give witnesses use immunity, and you saw an example of it in this very case,* and there are other methods available to the Government to obtain the testimony of a witness in this case. And I just want you to remember that you're the sole judges of the credibility of witnesses, and the weight to be given any witness' testimony is solely in your discretion.

(Jury Instr. Re Closing Argument Tr., at 65–66) (emphasis added).

■ O'Dell argued to the district court and contends on this appeal that this instruction did not go far enough to remedy the error. He offered his own instruction which detailed additional ways for the government to compel testimony and suggests that the district court erred in refusing to give his version. Our long-standing rule, however, is that a defendant " 'is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, correctly state the applicable law and adequately and fairly cover the substance of the requested instruction.' " *United States v. Gundersen*, 195 F.3d 1035, 1039 (8th Cir.1999) (quoting *United States v. Parker*, 32 F.3d 395, 400 (8th Cir.1994)). We think the district court's instruction correctly stated the law and was adequate to cure the prosecutor's remarks. The district court's instruction pointed out what was wrong with the prosecutor's statement and explained why. No additional explanation was needed.

Furthermore, the remaining two factors do not support a finding that the remarks were so prejudicial that O'Dell was deprived of a fair trial. The remarks were an isolated event, occurring during rebuttal closing arguments, and there is nothing to suggest that there was a cumulative detrimental effect. The properly admitted evidence, moreover, was certainly strong enough to support the verdict.

While we conclude that the remarks were improper, they were not prejudicial to the degree of depriving O'Dell of a fair trial. We find that the district court did not abuse its discretion in refusing to grant a mistrial. *See United States v. Emmert*, 9 F.3d 699, 701–02 (8th Cir.1993) (district court properly denied motion for mistrial where prosecutor's comments in rebuttal closing argument, though improper, were not prejudicial given judge's curative instruction and strength of the evidence), *cert. denied*, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994).

### III.

**A. Enhancement for Obstructing or Impeding the Administration of Justice**

■■■■ O'Dell maintains the district court committed three errors in sentencing. His first argument is that the district court erred in increasing his offense level by two levels for obstructing justice at a pretrial release revocation hearing. We review a district court's factual findings in support of an obstruction of justice enhancement for clear error and its application of the sentencing guidelines to the facts *de novo*. *United States v. Molina*, 172 F.3d 1048, 1058 (8th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 221, 145 L.Ed.2d 186 (1999).

■■■■ The sentencing guidelines provide for a two level enhancement in a defendant's offense level "[i]f the defen-

dant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." *U.S. Sentencing Guidelines Manual* § 3C1.1 (1995).[4] A defendant who commits perjury is subject to this enhancement, *United States v. Berndt*, 86 F.3d 803, 810 (8th Cir.1996), as is a defendant who provides "materially false information to a judge or magistrate." *U.S. Sentencing Guidelines Manual* § 3C1.1 commentary 3(f). A defendant commits perjury if, under oath, "she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). "The act of providing materially false information to a judicial officer also includes a requirement of willful intent to deceive the fact finder." *Molina*, 172 F.3d at 1058. The government bears the burden of proving the facts necessary to support a finding of obstruction of justice, *Berndt*, 86 F.3d at 810, and the standard of proof is the preponderance of the evidence. *Molina*, 172 F.3d at 1058.

The district court found that O'Dell committed perjury when he testified before a magistrate in a bond revocation hearing on May 11, 1998. The magistrate held the hearing after O'Dell was apprehended and later charged with a drug crime while he was out on pretrial release in the present

---

4. We note that O'Dell has quoted to this Court the version of section 3C1.1 found in the 1998 edition of the *U.S. Sentencing Guidelines Manual*. We assume, however, that the district court applied the 1995 edition because, according to the presentence report (PSR), the guidelines have changed to the disadvantage of the defendant since the present offense was committed. (PSR ¶ 86.) Therefore, the guidelines in effect at the time of the offense of conviction, that is, the 1995 edition, applied. *Id.* (citing *U.S. Sentencing Guidelines Manual* § 1B1.11(b)(1)-(2)). Regardless, our analysis of the issue in this case under both the 1995 and 1998 editions is the same, even though the 1998 edition contains an amended

version of section 3C1.1. This is because the amendment addresses a situation unrelated to O'Dell's enhancement for obstruction of justice. In particular, section 3C1.1 was amended to make it clear that it applies to those situations in which the obstruction occurs in a case closely related to the defendant's case, such as that of a codefendant. *U.S. Sentencing Guidelines Manual* § 3C1.1 amend. 581 (App. C Supp.1998) (amendments effective Nov. 1, 1998); *see, e.g., United States v. Walker*, 119 F.3d 403, 406–07 (6th Cir.) (defendant given an obstruction of justice enhancement where he gave perjured testimony during the trial of his codefendant), *cert. denied*, 522 U.S. 1036, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997).

case. Police had stopped O'Dell on March 16, 1998, for a traffic violation when they discovered a substance hidden in his jacket that field-tested positive for methamphetamine. The substance turned out to be a caffeine mixture, and O'Dell was charged with possession with intent to distribute a simulated controlled substance under Iowa law. At the hearing before the magistrate, O'Dell testified that he had mistakenly put on a jacket that belonged to someone else, and that he did not know that the simulated drugs were in the jacket. The magistrate found this testimony to be "entirely lacking in credibility." At sentencing, the district court made its own independent findings and concluded that O'Dell had committed perjury. We cannot conclude that the district court clearly erred in doing so.

■ Nor are we impressed with O'Dell's other argument: that the perjury must be material to the underlying offense. The word "material" is defined in the commentary to section 3C1.1 to mean "evidence, fact, statement, or information that, if believed, would tend to influence or affect *the issue under determination.*" *U.S. Sentencing Guidelines Manual* § 3C1.1 commentary 5 (emphasis added). Consistent with this definition, our cases have repeatedly upheld an enhancement under section 3C1.1 where the perjurious testimony did not go to the underlying charge, but the issue being decided. *See United States v. Lank,* 108 F.3d 860, 863 (8th Cir.1997) (defendant who committed perjury at a suppression hearing—by claiming that his statements made following his arrest were involuntarily given—was subject to an enhancement under § 3C1.1 in his sentence for bank robbery); *United States v. St. James,* 38 F.3d 987, 987–88 (8th Cir.1994) (defendant who lied about his identity to a magistrate and law enforcement officers could have his sentence for bank robbery enhanced for obstructing justice under § 3C1.1); *United States v. Blackman,* 904 F.2d 1250, 1258–59 (8th Cir.1990) (drug defendant's use of an alias

during a detention hearing and a pre-trial hearing qualified him for an obstruction of justice enhancement under § 3C1.1). Indeed, as the Sixth Circuit has said, "the test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the 'instant offense.'" *United States v. Crousore,* 1 F.3d 382, 385 (6th Cir.1993).

Here, the "issue under determination" was whether O'Dell's pretrial release should be revoked. O'Dell's perjurious testimony had the potential to influence or affect that determination. Enhancing O'Dell's offense level was therefore proper.

### B. Reduction for Mitigating Role

■ O'Dell's second argument regarding his sentence is that the district court erred in refusing to decrease his offense level based on his role in the Gomez organization. Section 3B1.2 of the sentencing guidelines provides for a reduction in a defendant's offense level if the defendant was either a "minimal" or "minor" participant in the criminal activity. The former is entitled to a four level reduction; the latter is entitled to a two level reduction. *U.S. Sentencing Guidelines* § 3B1.2. As the defendant, O'Dell had the burden of proof on this issue. *United States v. Wilson,* 102 F.3d 968, 973 (8th Cir.1996). A district court's factual findings that a defendant did not play a minimal or minor role is reviewed for clear error. *United States v. Belitz,* 141 F.3d 815, 818 (8th Cir.1998).

O'Dell's claim that he is entitled to a role reduction is not persuasive. Only those defendants who are among the "least culpable of those involved" are considered "minimal" participants, and only those who are "less culpable than most other participants" are considered "minor" participants. *U.S. Sentencing Guidelines* § 3B1.2 commentary 1, 3. Here, although O'Dell may have been less culpable than Gomez, he nevertheless was "deeply in-

volved" in the illegal conduct of the Gomez organization. *See Wilson,* 102 F.3d at 973 ("A defendant who is concededly less culpable than his codefendants is not entitled to the minor participant reduction if that defendant was 'deeply involved' in the criminal acts.") (citation omitted). O'Dell stored drugs at his house, transported them from Arizona back to Iowa, helped manufacture and "cut" methamphetamine, arranged for the payment of drugs, and helped count drug proceeds. O'Dell's role, we think, is better described as substantial, not minimal or minor. *See United States v. Jones,* 145 F.3d 959, 963 (8th Cir.) (drug defendant's involvement in the conspiracy was "substantial," and thus he was not entitled to a role reduction, where he stored drugs, packaging materials and money at his house, helped prepare drugs for sale, and helped obtain and pay for drugs), *cert. denied,* 525 U.S. 988, 119 S.Ct. 457, 142 L.Ed.2d 410 (1998). The district court did not clearly err in denying O'Dell's motion for a role reduction in his sentence.

### C. Reduction under the "Safety Valve" Provision

O'Dell's final contention is that the district court erred in refusing to reduce his sentence under the so-called "safety value" provision of *U.S. Sentencing Guidelines* § 5C1.2. *See also* 18 U.S.C. § 3553(f). The "safety valve" provision permits a district court to impose on a drug defendant a more lenient sentence within the otherwise applicable guidelines range if certain conditions are met. *United States v. Romo,* 81 F.3d 84, 85 (8th Cir.1996). A criminal defendant has the burden to prove that he is entitled to relief under this section, and our review of the district court's factual findings is for clear error. *United States v. Surratt,* 172 F.3d 559, 566 (8th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 257, 145 L.Ed.2d 216 (1999).

Section 5C1.2 lists five requirements which must be satisfied before a defendant may qualify for a reduction. Among them, and the only one at issue here, is the requirement that the defendant

truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

*U.S. Sentencing Guidelines* § 5C1.2(5). At his sentencing hearing, special agent John Graham testified for the government that, even after his conviction, O'Dell continued to deny his involvement in the essential conduct of which the jury found him guilty. For example, special agent Graham testified that O'Dell, in his presentence interview, maintained that he had no knowledge of transporting drugs from Arizona to Iowa. O'Dell also stated in the interview that he felt the wire transfers were for cars, not drugs, and he denied that he ever stored any drugs at his house. The district court, based on this testimony and its own credibility assessments, concluded that O'Dell had not been "completely truthful" in his debriefing, and therefore denied a reduction under the "safety valve" provision. We cannot say that this finding is clearly erroneous.

### IV.

For the foregoing reasons, we affirm the judgment of the district court.