# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2819

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Anthony Eugene Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2002

Filed: January 29, 2003

_____

Before BOWMAN, RILEY, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Anthony Johnson appeals from the sentence the District Court[1] imposed upon him after he pleaded guilty to one count of an indictment charging him with being a felon in possession of a firearm.[2] We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]A second count in the indictment, for possession of cocaine, was dropped.

Under the Sentencing Guidelines, a two-level adjustment to a defendant's base offense level is warranted if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S. Sentencing Guidelines Manual § 3C1.1 (2001). The adjustment applies to conduct that includes "committing, suborning, or attempting to suborn perjury." Id. cmt. n. 4(b). The enhancement was recommended in this case based on the contents of a letter Johnson wrote to Lloyd McCawley while McCawley was incarcerated in a Missouri state correctional facility. The District Court found that the letter's "context and syntax" reflected an attempt to suborn perjury. Transcript of Sentencing Proceedings at 14. The court further noted, "[T]here was an attempt to create testimony. And when one is attempting to create testimony it's because it's not true." Id. The court found that Johnson's attempt was willful and that the testimony he attempted to induce would have been material to his sentencing had the relevant sentencing reductions (for diminished capacity and for possessing a firearm only for sporting purposes) been pursued. The court therefore concluded that the facts supported a finding of an attempt to obstruct justice and increased Johnson's base offense level by two levels.[3] Johnson contends that the letter alone is insufficient evidence that he attempted to suborn perjurious testimony from McCawley. "An enhancement for obstruction of justice is based on findings of fact, which we review for clear error." United States v. Vaca, 289 F.3d 1046, 1049 (8th Cir. 2002).

The letter in question opens with Johnson telling McCawley that "they got me" and that he, Johnson, would plead guilty and seek a reduced sentence for diminished mental capacity. Letter from Anthony Johnson to Lloyd McCawley (Jan. 2000).[4] He

_____

[3]The court nevertheless adjusted Johnson's base offense level downward by three levels for acceptance of responsibility.

[4]A copy of the original letter is not in the designated record on appeal or in the Joint Appendix. The text of the letter (copied accurately, we assume, since neither

tells McCawley, "I'm going to need you to testify to the following for me at sentencing. Read this over and over good before you come to court. Stories have to match - OK!" Id. What follows then is a chronology of their alleged activities just prior to Johnson's arrest on the firearms charge. Johnson uses phrases such as "You drove me," "You and Maurice carried me," "Say you told Maurice to tell me." Id. The letter recounts events and conversations that Johnson could not have witnessed, as they would have occurred, if at all, when Johnson was passed out or not present. See, e.g., id. ("About an hour later [after Johnson had left the apartment] you started to worry about me and the telephone rang. . . . After Maurice hung up the telephone you asked Maurice what I was in jail for.") Regarding the gun found on the floorboard of the car that Johnson was driving when he was arrested, Johnson directs McCawley:

> (Say Maurice asked you why you let me take his car, I said I was going to walk) It is Maurice's Target Pistol a 32. Caliber R.G. Modle (sic) revover (sic), black with a brown handle with tape on it. Make sure you say it was a TARGET PISTOL AND Maurice had it for target shooting only "not for self defense" because I can get my sentence reduced if also if I obtained or possessed the firearm or ammunition soley for lawful sporting purposes or collection. They got me cause the bullets I had in my coat pocket carry the same time as the gun. I'm sending a copy of the police report so you will understand what and why to say (unknown) above. I am writing Maurice and getting him to say the same thing.

Id. Finally, Johnson asks McCawley to "[t]ell them I have the same mental impairment as Mahummad Ali. Brain Syndrome, and I need Adult Supervision." Id. That is followed by a detailed list of the purported manifestations of his "impairment," including, "I don't think clearly and make logical and rantional choices

_____

of the parties has indicated otherwise) appears in paragraph 15 of the Presentence Investigation Report (PSR) prepared by the probation office. Because we do not have a copy of the original letter, we will quote it here exactly as it appears in the PSR, without ourselves noting errors or emphasis.

and decisions. . . . I forget simple stuff . . . . Slow on thinking. Can't keep up with dates, events, appointments and stuff." Id. Yet Johnson wrote a detailed description of events that would have occurred two years earlier in order to have McCawley assist his attempt to get his sentence reduced—behavior that is neither illogical nor irrational. The letter itself reflects clear thinking and great attention to detail and belies Johnson's alleged "impairment." And notwithstanding Johnson's claim that the facts set out in the letter are true, he did not argue at his sentencing for reductions in his sentence on the grounds of diminished capacity or possession of a firearm or ammunition only for sporting purposes.

We do not think the court erred in relying solely on the letter in finding by a preponderance of the evidence the necessary factual predicate for a § 3C1.1 adjustment. We do not say that it would not have been preferable for the government to have provided the court with additional evidence, as Johnson proposes. But given the deferential standard of review in this case (and being in any event in agreement with the District Court's finding that the letter constituted an attempt to suborn perjury), we see no basis for reversal.

Johnson's sentence is affirmed and his pro se motion for Leave to File Deposition is denied.

RILEY, Circuit Judge, dissenting.

The district court found Johnson attempted to suborn perjury based solely upon the "context and syntax" of Johnson's letter to McCawley. The government did not offer any evidence, other than the letter itself, to prove any of the statements in the letter were false. The district court theorized, "this may very well fall into the category 'you know it when you see it.'" Because I do not "see it" and because a fundamental principle of our judicial system requires that the government prove its case, I respectfully dissent.

-4-

No presumption of falsity worked in the government's favor when it offered Johnson's letter. The government still bore the burden to prove by a preponderance of the evidence that Johnson willfully attempted to suborn perjury. See United States v. O'Dell, 204 F.3d 829, 836 (8th Cir. 2000). Perjury occurs when a "witness testifying under oath . . . gives **false testimony** concerning a **material matter** with the **willful intent** to provide false testimony, **rather than as a result of confusion, mistake, or faulty memory**." United States v. Dunnigan, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1)) (citations omitted) (emphasis added). See also U.S.S.G. § 3C1.1, cmt. n.2 (When applying section 3C1.1 to a defendant's statements, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.").

These essential elements of perjury cannot be presumed, but must be proved. The district court's reliance on "you know it when you see it" either presumes materiality, willfulness and falseness or relies on judicial intuition. Judicial intuition is helpful, but intuition alone is not enough to increase punishment. Proof is. By simply offering the letter, the government did not prove Johnson willfully intended to elicit materially false testimony, rather than being confused, mistaken or subject to a faulty memory.

The probation office suggested the court evaluate the letter by obtaining the direct testimony of McCawley at the sentencing hearing. PSR at 22. The government chose not to call McCawley at the sentencing hearing, which may have been based on the assumption McCawley would have substantiated the truthfulness of the letter's statements.[5] At oral argument, our court asked government counsel to identify any

---

[5]After the sentencing hearing, Johnson submitted an affidavit from McCawley verifying the accuracy of the statements contained in the letter. McCawley is now deceased.

evidence that shows any material statement in the letter was false. Counsel relied solely on the "context and syntax" of the letter and could not identify one false statement through independent evidence. Only a presumption of falsity could substantiate the government's interpretation of the letter.

Although Johnson's letter creates a natural suspicion that he attempted to suborn perjury, the government presented absolutely no evidence to substantiate that natural suspicion. The assertions in the letter are the same assertions Johnson professed in his interview for the presentence investigation. The PSR did not refute Johnson's assertions. Johnson did not deny writing the letter and was "adamant that the events on which he was 'coaching' McCawley are accurate." PSR at 7, ¶ 16. "Coaching" witnesses is a practice (or an art) regularly used by lawyers. Coaching a witness by refreshing one's memory or informing the witness what others recall is not suborning perjury unless the information is materially false and knowingly so. Johnson is not a lawyer. He has only an eighth grade education and a borderline IQ of 71. His attempt to coach McCawley should not be judged by the same standard as a lawyer's preparation of a witness.

In finding Johnson attempted to suborn perjury, the district court did not hear testimony, make credibility determinations, or consider independent evidence, but simply read Johnson's jailhouse letter. Because the district court made no factual findings and simply reviewed an uncontested letter, as we are capable of doing, our review should be de novo.[6] The letter alone does not support a finding of false

---

[6]An obstruction of justice enhancement for perjury should be based on findings of fact, which are reviewed for clear error. United States v. Farmer, 312 F.3d 933, 937 (8th Cir. 2002); but see United States v. Cox, 985 F.2d 427, 433 (8th Cir. 1993) (materiality is a question of law based on the factual situation). However, the district court made no factual findings and simply interpreted an uncontested letter, which does not warrant a clearly erroneous standard of review. See United States v. Tilford, 224 F.3d 865, 867 (6th Cir. 2000) (de novo standard of review applies to uncontested

testimony and a willful attempt to suborn perjury. I respectfully dissent and would reverse the obstruction of justice enhancement based on the government's failure to meet its burden of proof.[7]

_____

facts); United States v. Nguyen, 190 F.3d 656, 660 (5th Cir. 1999) (same); McGurk v. Stenberg, 163 F.3d 470, 473 (8th Cir. 1998) ("We review questions of ineffective assistance of counsel based on an undisputed factual record de novo."); United States v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994) (application of law to "historical facts" reviewed de novo). Furthermore, the district court's "findings" here are more akin to contract interpretation than a factual finding of perjury, which would also mandate a de novo review. See, e.g., United States v. Austin, 255 F.3d 593, 596 (8th Cir. 2001) (issues regarding interpretation of plea agreement are reviewed de novo according to general contract interpretation principles). This case simply does not lend itself to a deferential standard of review.

[7]The letter in full reads (PSR at 5, ¶ 15):

Dear Mac, Well buddy they got me. I am going to have to plead guilty and try and get a reduced sentence under "diminished mental capacity." I have to show that although I am convicted, I have a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason. To think clearly and to make logical and rational choices and decisions. I'm going to need you to testify to the following for me at sentencing. Read this over and over good before you come to court. Stories have to match – OK!

On January 23, 2000, You came down to stay at my apartment with me and Maurice. Maurice was living with [me] because he had been evicted from his apartment a week or 2 earlier.

On January 24, 2000, You drove me down to Clifton Hill in your mother's car and brought a bottle of zanax from a guy in Cliffton Hill

On the way back to Columbia I took a bunch of them and passed out. When we got back to the apartment You and Maurice carried me into the

-7-

house and placed me into my bed. Hours later I woke up and ran out of ciggaretts (sic). You were washing dishes. I came into the kicthen (sic) wearing Black sweat pants with no pockets and a dark blue tea (sic) shirt. I asked you for $3 to go buy some ciggeretts (sic) out of $512 of my mental disability check you were keeping for me. Because I loose [sic] money, hid it and can not find it and people steal my money from be [sic] because of my mental disability you all do not let me keep money or drive cars. You gave me $3 and I placed it in my sock and told you I was going to walk up to brake time a block up the street and buy ciggretts (sic). Maurice was on the living room couch asleep. I seemed groggy and unstable on my feet and impaired, you asked me if I was alright and you thought the walk up to brake time would do me some good cause it was cold and snowing outside. I said I'm alright. I grabbed my coat and the apartment key which had Maruices [sic] car keys on it and left the apartment and locked the sliding glass door from outside. No gun was in my coat cause you placed it on the back of the kitchen chair when you were cleaning up. About an hour later you started to worry about me and the telephone rang. Maurice woke up and answered the telephone and told yo [sic] I was in jail and that I need you to bond me out of jail with my mental disability money you were keeping for me from my SSI check. Say you told Maurice to tell me what money? Cause you all play with me about my money all the time and I get mad. Maurice told me what money and I asked Maurice why you didn't have my money (P.S. J.P. NEVER SAID A WORD). Then you told Maurice (sic) to tell me you all were just playing around with me and would sen [sic] the Bondswoman Miss Jerri right down to get me out. After Maurice hung up the telephone you asked Maurice what I was in jail for. Maurice said I took his car and the police stopped it and found Maurices [sic] target pistol in it that Maurice had left under a newspaper on the floor board of the front drivers [sic] side. That I did not know the gun was in the car. (Say Maurice asked you why you let me take his car, I said I was going to walk) It is Maurice's <u>Target</u> <u>Pistol</u> a 32. [sic] Caliber R.G. Modle (sic) revover (sic), black with a brown handle with tape on it. Make sure you say it was a <u>TARGET PISTOL</u> AND Maurice had it for <u>target shooting only</u> "not for self defense" because I can get my sentence reduced if also I obtained or possessed

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

the firearm or ammunition soley [sic] for lawful sporting purposes or collection. They got me cause the bullets I had in my coat pocket carry the same time as the gun. I'm sending a copy of the police report so you will understand what and why to say (unknown) above. I am writing Maurice and getting him to say the same thing. The attorney may ask you about my mental condition. Tell them I have the same mental impairment as Mahummad [sic] Ali. Brain Syndrome, and I need Adult Supervision. I am not violent. I don't think clearly and make logical and rantional choices and decisions. I cannot control my behavior that I know is wrongful. I forget simple stuff – use alcohol and drugs. Slow on thinking. Can't keep up with dates, events, appointments and stuff. Can't shop alone, Ill (sic) buy stuff I already got or don't need. I get lost in the Mall parking lots stuff like that. Don't pay bills. Loose [sic] keys. I'm too nice I give away stuff I shouldn't and people easily take advantage of me. Can't count money properly. My attorney or his investorgator (sic) will be down there to see you and I will have him send you a copy of the police report. I will not be back until this is over. They will be writting [sic] you to court. They wouldn't let me bring stamps with or your number, just legal papers. I get one stamp a week. Write back. Love, Thanks, Tony