# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2156

_____

United States of America

*Plaintiff - Appellee*

v.

Jennifer Marie Jensen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: June 17, 2016
Filed: August 24, 2016

_____

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jennifer Jensen ("Jennifer")[1] pled guilty to receiving child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2. The district court[2] sentenced Jennifer to the statutory maximum of 240 months imprisonment pursuant to 18 U.S.C. § 2252(b)(1). Jennifer appeals her sentence, arguing the district court erred in applying an enhancement for obstruction of justice and in denying a reduction for acceptance of responsibility. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

In 2006, while pregnant with their daughter, H.J., Jennifer married Brad Jensen ("Brad"), who had been convicted in Iowa state court in 1999 for engaging in lascivious acts with his then six-year-old daughter. Brad and Jennifer each had older children from previous relationships. The couple frequently used methamphetamine together, creating a volatile relationship that included violence and sexual deviance by both partners. Jennifer left Brad in March 2013. Two months later, Jennifer reported to local law enforcement officers that Brad had sexually abused M.H., her teenage daughter, years before. Jennifer's report was made only after M.H. disclosed the abuse to someone outside of the family. Law enforcement officers interviewed M.H., who confirmed the sexual abuse and made allegations that led law enforcement to conduct forensic interviews with all of Brad and Jennifer's children.

H.J., who was six years old at the time of sentencing, underwent three interviews, all of which were recorded and viewed by the district court prior to Jennifer's sentencing hearing. H.J. provided the following information during the

---

[1]Because both Brad and Jennifer Jensen are involved in this case, we refer to each of them by their first names for clarification purposes.

[2]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

first two interviews. On multiple occasions, Brad instructed H.J. to remove her clothes when she returned home from school, and if she refused, Brad spanked her or threatened to tell Jennifer "the truth." Brad took "inappropriate" pictures of H.J. while she bathed and changed clothes. On several occasions, Brad took H.J. upstairs, removed their clothes, and napped with her. During the naps, Brad would kiss H.J. on her neck and perform oral intercourse on her. H.J. described pain from both oral and anal intercourse with Brad as well as incidents involving Brad ejaculating on her or into her mouth. H.J. reported that Jennifer knew Brad kissed H.J. because she observed the kisses to make sure it did not "go too far."

During the third forensic interview, H.J. revealed additional information specific to Jennifer's involvement in the sexual abuse. H.J. initially reported that Jennifer took good care of the children and did not "do anything wrong," but later stated that Jennifer was present when Brad "kid molested" her. Brad and Jennifer were under the influence of drugs often. H.J. disclosed that Jennifer tricked H.J. into coming into her bedroom for a surprise, then put a knife in the door so no one else could enter the bedroom. H.J. did not feel comfortable revealing what happened in the bedroom on that occasion, but stated that Jennifer told H.J. not to talk about the abuse because "it's a felony." H.J. claimed Jennifer told her that Jennifer might go to jail because of what had happened and that she was supposed to keep it a secret because it was "freaky" and "weird."

H.J.'s disclosures during the first forensic interview established probable cause for a search warrant to be executed at the residence Brad and Jennifer had shared. Law enforcement officers discovered over 18,000 images and 1,700 videos of child pornography on seized computer media, including naked images of H.J. and videos of Brad sexually abusing H.J. Fifty-eight of the child pornography images were attributed directly to Jennifer. Some of the images from the Jensen's home depicted Brad sexually abusing an infant; an adult female could be seen in the photographs

assisting Brad, but the female's face was not visible. The infant was later identified as Brad's three-month-old granddaughter, J.S.

Jennifer was originally interviewed in July 2013 about the sexual abuse, and denied any involvement. The government later conducted two proffer interviews of Jennifer in an attempt to confirm who had assisted Brad in the sexual abuse of J.S. In October 2013, Jennifer claimed that she had been so high on methamphetamine while with Brad that she could not remember if she was the woman in the pictures with Brad and J.S. In December 2013, Jennifer denied being the woman in the pictures, saying "[I]t's not me. I'm not the type of person to do something like that." She also denied touching any of the children in a sexually abusive manner during a psychological evaluation in May 2014.

Brad eventually admitted his sexual abuse of both H.J. and J.S. as well as production of child pornography.[3] During a December 2013 interview, Brad stated that Jennifer assisted him in sexually abusing J.S. and photographing the abuse. Further, Brad advised that Jennifer was present and involved when he took sexually explicit pictures and videos of H.J. During a proffer interview, Brad stated that he and Jennifer sexually abused J.S. on two occasions, captured pictures of at least one of the incidents of abuse, and viewed the images a few times afterward. Specific to H.J., Brad stated that Jennifer frequently told H.J. what to do with Brad, i.e., giving instructions on how to perform oral intercourse on Brad. Jennifer watched Brad record the abuse, and the couple watched the sexually explicit videos of H.J. for

---

[3]The Court notes that, for his involvement in the sexual abuse described above, Brad was sentenced to 390 months imprisonment with a 120 month term of supervised release to follow upon conviction for sexual exploitation of a child and production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2256. United States v. Jensen, No. 4:13-cr-00093-SMR-CFB (S.D. Iowa May 8, 2015).

-4-

sexual arousal on several occasions. Brad's statements were corroborated by H.J.'s forensic interviews.

A grand jury originally returned a three-count indictment against Jennifer, accusing her of two counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a), 2256, and 2, and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), 2256, and 2. A superseding indictment charged Jennifer with six counts of production of child pornography involving an infant female in violation of 18 U.S.C. §§ 2251(a), 2256, and 2, as well as possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), 2256, and 2. Ultimately, Jennifer pled guilty only to receipt of child pornography in violation of 18 U.S.C. §§2252(a)(2) and 2, in part to avoid making H.J. testify against her parents as would have been necessary under the original charges.

Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(c)(1), Jennifer's sentence was calculated under U.S.S.G. § 2G2.1 because the offense involved sexual exploitation of a minor by production of sexually explicit visual or printed material. Under U.S.S.G. § 2G2.1, Jennifer's base offense level was 32. The following enhancements were then added: a four-level enhancement under U.S.S.G. § 2G2.1(b)(1)(A) because the offense involved a minor under the age of twelve; a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) because a sexual act was committed; a four-level enhancement under U.S.S.G. § 2G2.1(b)(4) because the offense involved material that portrayed sadistic or masochistic conduct; a two-level enhancement under U.S.S.G. § 2G2.1(b)(5) because Jennifer was the parent and relative of the victims; a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice because Jennifer told H.J. not to talk about her involvement; and a two-level enhancement under the grouping rules set forth in U.S.S.G. §§ 3D1.2, 3D1.3, and 3D1.4 because the offense involved multiple victims. The combined adjusted offense level totaled 48, but the district court treated Jennifer's total offense

level as a 43, the ceiling of the Guidelines sentencing table, pursuant to Guidelines Chapter 5, Part A, cmt. n.2. Jennifer objected to the application of the obstruction of justice enhancement and argued that she earned a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The district court applied the obstruction of justice enhancement, along with the other enhancements listed above, and denied Jennifer's request of an acceptance of responsibility reduction. The Guidelines provide for life imprisonment for a level 43 offense; however, 18 U.S.C. § 2252(b)(2) limits the statutory maximum sentence for a violation of 18 U.S.C. § 2252(a)(2) to twenty years. The district court discussed the pertinent 18 U.S.C. § 3553(a) factors, then imposed the 240 month sentence – below the Guidelines minimum but equal to the statutory maximum sentence. This appeal followed.

II.

A.

On appeal, Jennifer first argues the district court erred when it applied the obstruction of justice enhancement. An appellate court reviewing a district court's sentencing decision "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Beckman, 787 F.3d 466, 494 (8th Cir. 2015) (quoting Gall v. United States, 552, U.S. 38, 51 (2007)). We review a district court's factual findings for clear error and its application of the Guidelines de novo. United States v. Muckle, 755 F.3d 1024, 1025 (8th Cir. 2014).

U.S.S.G. § 3C1.1 provides for a two-level increase in a defendant's offense level if the defendant obstructs justice. "[T]hreatening, intimidating, or otherwise

unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so" are examples of the types of conduct to which this enhancement applies. U.S.S.G. § 3C1.1 cmt. n.4(A). Here, the evidence at sentencing showed Jennifer tampered with H.J., a critical witness in the investigation of the instant case. Jennifer knew H.J. was a witness in the investigation from the time of H.J.'s first forensic interview in May 2013 and knew the investigation covered the sexual abuse of numerous children as well as child pornography charges. H.J. made several statements during her third forensic interview that indicated Jennifer coached her regarding her statements to law enforcement. Specifically, Jennifer explained to H.J. before the interview that she might go to jail. H.J. first asserted that her mother did nothing wrong, but exclaimed moments later that her mother "kid molested" her. H.J. also disclosed that her mother told her not to talk about what happened in the bedroom because it was "freaky" and "weird." H.J. indicated she was told to keep the bedroom incidents a secret because otherwise "people will know what happened." During the interview, H.J. began talking about things Jennifer did to her, then stopped suddenly and said "I'm supposed to have forgotten."

Jennifer argues no other evidence indicates she coached H.J. or tampered with any other witness, including H.J., and that her lies to law enforcement and the government during earlier interviews regarding her involvement in the sexual abuse do not amount to obstruction of justice. Because the district court stated "[h]ere I am not finding obstruction based on her lies during her proffer interviews," we consider only Jennifer's coaching of H.J. in determining whether an obstruction of justice enhancement was properly applied. The district court interpreted H.J.'s statements during her third forensic interview as evidencing attempts by Jennifer to unlawfully influence H.J.'s testimony. See United States v. Johnson, 821 F.3d 1031, 1034 (8th Cir. 2016) (finding the district court did not clearly err in applying an obstruction of justice enhancement where defendant attempted to bribe witnesses); United States v. Thompson, 210 F.3d 855, 861-62 (8th Cir. 2000) (concluding the defendant's

gestures and attempts to influence witnesses supported the district court's application of the obstruction of justice enhancement).

Jennifer also emphasizes the language from U.S.S.G. § 3C1.1 requiring the obstruction be relevant to the "*instant* offense of conviction" (emphasis added), and contends that any tampering with H.J.'s third forensic interview was irrelevant to the receipt of child pornography. The Information to which Jennifer pled guilty states that "[b]etween approximately March 3, 2013, and approximately March 18, 2013," Jennifer "did knowingly receive one or more visual depictions" of child pornography. H.J.'s third forensic interview occurred on December 16, 2013. According to Jennifer, any unlawful influence she exerted on H.J. in preparation for that interview could not constitute conduct relevant to the *instant* offense of conviction because Brad had already informed the government of Jennifer's involvement in receiving child pornography by that point.

However, "[t]he district court has broad discretion to apply section 3C1.1 to a wide range of conduct." United States v. Collins, 754 F.3d 626, 629 (8th Cir. 2014) (quoting United States v. Billingsley, 160 F.3d 502, 506 (8th Cir. 1998)). Clause (2)(B) of U.S.S.G. § 3C1.1 makes clear that the enhancement is applicable in cases involving the defendant's obstructive conduct related to "a closely related offense." This court, along with our sister circuits, has held U.S.S.G. § 3C1.1 applicable to defendants whose conduct obstructed the investigation, prosecution, or sentencing of cases closely related to the defendant's case. See United States v. Killingsworth, 413 F.3d 760, 764 (8th Cir. 2005) ("We agree with the conclusion that, as long as the investigation, prosecution, or sentencing or the instant offense of conviction is ongoing, . . . the adjustment would apply if the defendant obstructed justice in a co-defendant's case") (internal quotations and citations omitted); United States v. O'Dell, 204 F.3d 829, 836-37 (8th Cir. 2000) (holding that perjury constituted obstruction of justice under § 3C1.1 "where the perjurious testimony did not go to the underlying charge, but the issue being decided"); United States v. Mollner, 643 F.3d

713, 718-19 (10th Cir. 2011) (concluding "the obstruction-of-justice enhancement applies where a defendant attempts to obstruct justice in a case closely related to his own, such as that of a co-defendant); United States v. Jones, 308 F.3d 425, 428-29 (4th Cir. 2002) (discussing Clause (2)(B) in depth, holding that the 1998 amendment[4] to U.S.S.G. § 3C1.1 "made plain that the broad reading of § 3C1.1 was correct," and concluding that "although [defendant's] perjurious statement was not about the offense of conviction, his conduct falls within § 3C1.1 because it occurred during the detention hearing that related to [defendant's] offense of conviction); United States v. Verdin, 243 F.3d 1174, 1180 (9th Cir. 2001) (concluding that U.S.S.G. § 3C1.1 "include[s] obstructions in a closely related case, such as that of a co-defendant"); United States v. Crousore, 1 F.3d 382, 385 (6th Cir. 1993) (stating "the test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the instant offense") (internal quotations omitted).

Law enforcement officers performed the third forensic interview with H.J. in the course of investigating the involvement of both Jennifer and Brad regarding multiple charges related to child pornography. Having reviewed H.J.'s forensic interviews, we conclude the district court did not clearly err in its factual findings. H.J.'s statements clearly indicate that Jennifer coached her and advised her not to reveal Jennifer's involvement in the abuse. Jennifer's tampering with H.J. obstructed the investigation of closely related child pornography charges for both Brad and Jennifer. Although Jennifer agreed to a plea bargain with the government, under which she pled guilty to receipt of child pornography, the investigation into the sexual abuse of J.S. and H.J. encompassed conduct relevant to Jennifer's instant offense of conviction as well as closely related offenses, such as Jennifer's original charges of production and possession of child pornography and Brad's charges of sexual exploitation of a child and production of child pornography. Jennifer's

---

[4] U.S.S.G. app. C, amend. 581.

-9-

tampering with H.J. qualifies under U.S.S.G. § 3C1.1 as "threatening, intimidating, or otherwise unlawfully influencing" a witness, which constitutes obstructive conduct related to "the defendant's offense of conviction and any relevant conduct" or "a closely related offense." Accordingly, we affirm the district court's decision to increase Jennifer's offense level pursuant to U.S.S.G. § 3C1.1.

B.

Jennifer next argues the district court erred in refusing to award her a three-level reduction pursuant to U.S.S.G. § 3E1.1, which allows for such a reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for [her] offense." "We review the district court's denial of an acceptance of responsibility reduction for clear error and will reverse only if it is so clearly erroneous as to be without foundation." United States v. Adejumo, 772 F.3d 513, 536 (8th Cir. 2014) (internal quotation omitted). Indeed, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for [her] criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1 cmt. 4. We look to the totality of the circumstances to determine whether a particular case is "extraordinary." Adejumo, 772 F.3d at 536.

Jennifer argues she earned a reduction for acceptance of responsibility because she initiated the investigation into the abuse by taking M.H. to law enforcement to report Brad's sexual abuse. However, we note that Jennifer only took M.H. to law enforcement years after Brad abused her and only after M.H. disclosed the abuse to someone outside of the family. Further, during her proffer interviews, Jennifer refused to admit any involvement and denied that she was the woman pictured with Brad and J.S. She participated in the sexual abuse of several children. She never reported Brad's sexual abuse of the children to law enforcement and failed to disclose their possession of child pornography during the investigation. Various law

-10-

enforcement officials, as well as the prosecution, afforded Jennifer numerous opportunities to admit her role in the abuse and accept responsibility. Jennifer chose to lie repeatedly during those interviews. For those reasons, we conclude the district court did not clearly err and had an adequate foundation upon which to deny Jennifer's request for an acceptance of responsibility reduction under U.S.S.G. § 3E1.1.

C.

The district court determined Jennifer's combined adjusted offense level was 48. The district court treated Jennifer's total offense level as a 43 pursuant to Guidelines Chapter 5, Part A, commentary note 2, because 43 is the ceiling of the Guidelines range. Even if Jennifer received the three-level reduction for acceptance of responsibility and did not receive the two-level enhancement for obstruction of justice, her combined adjusted offense level would be 43. Thus, any error by the district court in its application of U.S.S.G. §§ 3C1.1 or 3E1.1 would be harmless because the total offense level would not change. See United States v. Stong, 773 F.3d 920, 925-26 (8th Cir. 2014) (holding any error in the application of certain enhancements would be harmless where the defendant's total offense level would ultimately remain the same at the sentencing guidelines cap of 43).

Finally, at sentencing, the district court stated that the § 3553(a) analysis "is always the most important step," explaining that it considers "what happened and who the person was that committed that crime and [puts] all of those things together and come[s] up with a sentence that is fair and reasonable, that . . . causes deterrence and properly punishes and keeps the community safe." The district court then reviewed some key facts and circumstances of the case, noting in particular that Jennifer admitted she "scolded" H.J. when she discovered H.J. naked in bed with Brad. Based on the § 3553(a) factors, the district court concluded that it could not "find in this situation that a sentence of anything less than the statutory maximum is

appropriate." That statement by the district court clarifies that any potential change in offense level based on the adjustments at issue on appeal would not have changed the sentence imposed in this case. Although the Guidelines range for a level 43 offense is life imprisonment, the district court imposed the statutory maximum sentence, 240 months imprisonment, under 18 U.S.C. § 2252(b)(1). We are satisfied that, in imposing the statutory maximum sentence, the district court appropriately considered the relevant factors and that any error regarding the obstruction of justice enhancement or acceptance of responsibility reduction would be harmless.

III.

For the foregoing reasons, we affirm the district court's sentence.

BRIGHT, Circuit Judge, concurring.

I write separately because I disagree with the district court's conclusion, after considering the 18 U.S.C. § 3553(a) factors, that "anything less than the statutory maximum" sentence was inappropriate for Jennifer. This is a special case, and one in which the § 3553(a) factors require lenience. I concur in the result only because Jennifer did not challenge the district court's § 3553(a) analysis – only the application of the Guidelines – and therefore this issue is not before us. However, the matter deserves comment in a separate opinion.

Jennifer's offense is very serious, but the court should view this offense in light of the fact that she is a male-coerced female sex offender with significantly less culpability than her husband. Male-coerced female sex offenders are often victims of domestic violence "who join their male partner in abuse that he had previously been committing alone." Gina Robertiello & Karen J. Terry, Can We Profile Sex Offenders? A Review of Sex Offender Typologies, 12 Aggression and Violent Behavior 508, 514 (2007). Often, as here, their victims are their own children. Id.

-12-

They are motivated not by their own desires, but rather by their fear of repercussion from their own abuser. Id.

Jennifer is the prototypical male-coerced female sex offender. Brad subjected Jennifer to years of abuse, both physical – choking her, beating her, and shoving her in a closet – and psychological – forcing her to wear a dog collar, and calling her a "fat bitch" and a "whore." Brad's abuse was so severe and extensive that a psychologist diagnosed Jennifer with post traumatic stress disorder (PTSD). Despite this abuse – or, perhaps, because of this abuse – Jennifer was unable to leave Brad, even though she tried at least twenty times. This is unsurprising. After all, Brad was not only Jennifer's husband, but also the father of her children, and, importantly, her drug dealer. She depended on him.

This above dependence left Jennifer in Brad's control, and in her mind she had no choice but to help Brad sexually abuse H.J. and J.S. Like other male-coerced female sex offenders, Jennifer was motivated by her desire to avoid repercussion from Brad. Her PTSD was so severe that she could not contemplate stopping Brad from abusing her children, so her focus shifted to minimizing the damage he could cause the children. This is why she thought it would be "better for him to abuse a three-month-old" than her children, who "were at the age where they would remember." (Sent. Tr., p. 78). Indeed, Jennifer's psychological profile also identified this same thought process: "When confronted with difficult situations . . . she chose to comply with the demands of her husband rather than the alternative, such as staying away once she left or calling the authorities." Significantly, Jennifer never abused her children before she met Brad, and she never abused them after she left Brad. Brad was the driving force behind the abuse – the registered sex offender who first began abusing H.J. and coerced Jennifer into helping him.

Jennifer's psychological condition is not a legal defense, but it could be a mitigating factor under 18 U.S.C. § 3553(a). First, this condition relates to the nature

-13-

and circumstances of the offense and Jennifer's history and characteristics, 18 U.S.C. § 3553(a)(1), because it shows that Jennifer was pulled into this offense by her desire to avoid retaliation from Brad, not out of her own criminal intent. Jennifer's psychological state minimizes her culpability, and therefore it could warrant lenience. Second, Jennifer's psychological condition relates to the need to protect the public from further crimes she might commit, 18 U.S.C. § 3553(a)(2)(C), because the fact that she did not commit any sexual offenses against her children before she met Brad and after she left Brad shows it was his influence that led her to commit these crimes. With Brad gone, there is less risk she will re-offend, and less need to protect the public from Jennifer. Each of these factors could mitigate against the statutory maximum sentence imposed on her.

The district court, however, ignored these factors in its 18 U.S.C. § 3553(a) analysis.[5] The Supreme Court requires a district court to consider all of the § 3553(a) factors, to "make an individualized assessment based on the facts presented," and to explain its chosen sentence adequately to allow for meaningful appellate review. Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed.2d 445 (2007). Here, the district court simply paraphrased the § 3553(a) factors, noted that Jennifer participated in a horrific crime, and sentenced her to serve twenty years in jail. (Sent. Tr. pp. 114-15). The sentencing judge engaged in no meaningful § 3553(a) analysis, and, egregiously, she did not explain why she was sentencing Jennifer to the statutory maximum sentence despite the significant abuse she suffered, which drove her to commit this offense.

---

[5]This concurrence focuses on the § 3553(a) factors, because I believe the Guidelines here are out of line. The Guidelines do not account for the abuse that drove Jennifer to commit this crime as a male-coerced female sex offender, and therefore they have limited application. See United States v. Deegan, 605 F.3d 625, 645-650 (8th Cir. 2010) (Bright, J., dissenting) (discussing the inapplicability of the Guidelines when case presents unique circumstances that the Guidelines do not take into account).

I believe this sparse § 3553(a) analysis was erroneous. See United States v. Spencer, 700 F.3d 317, 328 (8th Cir. 2012) (Bright, J., dissenting) (encouraging sentencing judges to engage in a meaningful analysis of the § 3553(a) factors). Had Jennifer appealed the sufficiency of the sentence, I would vote to vacate her sentence and remand for resentencing, with instructions to the district court to fully consider the § 3553(a) factors, including the abuse Jennifer suffered and the low likelihood she will commit further crimes. Since Jennifer did not appeal this issue, however, I concur in the judgment.

_____